PEOPLE v SUN

Docket Nos. 78-3930, 78-3931, 78-3932, 78-3933. Submitted September
    4, 1979, at Lansing.—Decided January 9, 1980. Leave to appeal
    applied for.

Defendant, Dr. Kwoh Cheng Sun, M.D., was convicted of four
    counts of violation of the Controlled Substances Act in the
    Lenawee Circuit Court, Rex B. Martin, J. The charges arose out
    of seven separate visits to defendant's office by four police
    officers posing as patients. Defendant appeals. *Held:*

It does not follow that, because a physician is prohibited from
    trafficking in drugs, he can be prosecuted for simple departures
    from generally accepted standards of professional practices and
    ethics. In order to convict a physician of a violation of the
    Controlled Substances Act the evidence must show more than
    mere carelessness, bad judgment or malpractice. The facts
    adduced at trial failed to establish defendant's intent to traffic
    in drugs and distribute them in bad faith for a nonmedical
    purpose.

Reversed.

Drugs and Narcotics — Controlled Substances Act — Physicians
    and Surgeons — Evidence.

It does not follow that, because a physician is prohibited from
    trafficking in drugs, he can be prosecuted for simple departures
    from generally accepted standards of professional practices and
    ethics; in order to convict a physician of a violation of the
    Controlled Substances Act the evidence must show more than
    mere carelessness, bad judgment or malpractice.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Harvey A. Ko-
selka,* Prosecuting Attorney (by *Leonard J. Mali-
nowski,* Assistant Attorney General, Prosecuting
Attorneys Appellate Unit), for the people.

*Richard L. Roble,* for defendant.

REFERENCE FOR POINTS IN HEADNOTE
61 Am Jur 2d, Physicians and Surgeons § 91.

Before: M. J. Kelly, P.J., and M. F. Cavanagh and Cynar, JJ.

Per Curiam. Defendant was charged with and convicted of four counts of violation of the Controlled Substances Act, MCL 335.341(1)(b); MSA 18.1070(41)(1)(b). From that judgment and subsequent sentence of five years probation and $250 costs per charge defendant appeals by right.

The evidence shows that at the times in question defendant was a duly licensed physician practicing from his office in Addison, Michigan. The defendant, Dr. Sun, was a native of China who spoke very little English; for this reason he relied upon his secretary/receptionist to a significant degree in effecting communications between himself and his patients.

Four separate agents of the state visited defendant in his office and obtained prescriptions for various drugs listed in the Controlled Substances Act, MCL 335.301 et seq.; MSA 18.1070(1) et seq. The first agent made three visits to the defendant's office, while the other three agents all made one. On his initial visit, the first agent told the receptionist that he had insurance through the Teamsters International and that he had a hay fever allergy. He then told defendant that he had a prescription to refill and refused the defendant's suggestion that he receive a B-12 injection after defendant had noted that the prescription was for diet medication. The agent informed defendant that he needed the pills to stay awake since he worked a straight 24 hours on occasion and defendant prescribed the refill of the noncontrolled substance, charging $10. Altogether, some twenty minutes elapsed during this visit.

The agent returned to defendant's office one week later per defendant's suggestion and asked

for another refill. While defendant telephoned for the prescription refill, the agent additionally requested Seconal. Defendant prescribed four Seconal tablets and, in response to the agent's request for a greater number, he instructed the receptionist to mark the prescription for a refill.

The agent's third visit occurred three days later. At that time he requested a refill for the Seconal prescription, but defendant suggested Doriden. The agent stated that if he couldn't obtain Seconal he would like to get quaaludes. Defendant would not prescribe quaaludes and the agent agreed to receive Doriden. The agent then stated that he wanted some Valium too, and defendant included a prescription for Valium with that for the Doriden.

Another agent visited defendant's office and stated that he needed some medication. The receptionist ascertained from him that he was taking antibiotics and Valium at that time. She asked him at least twice why he was taking Valium and he said that he did not know. She then inquired as to whether he was seeing another doctor and he told her that a doctor in Lansing had prescribed the antibiotics and medicine for his cold. Defendant also inquired through the receptionist as to why the agent was taking Valium, and the prescription was subsequently prepared.

In the final instance, another agent testified that he entered defendant's office, gave defendant his name, address and age and then stated, "There's really nothing wrong with me, but I just wanted to get some [T]uinal". Defendant replied that Tuinal was a bad drug, and suggested that he use Doriden instead. The agent agreed and defendant wrote him a prescription for six Doriden pills.

On all of these occasions, defendant performed

no physical examination and charged $10 for each visit. Given these facts, defendant urges this Court to find that he prescribed the medications in good faith while acting within the lawful practice of his profession and should, therefore, be exempt from prosecution under the act. MCL 335.341(1)(b); MSA 18.1070(41)(1)(b).

There are few cases from this jurisdiction that deal with this matter. The most recent and controlling decision is *People v Alford*, 405 Mich 570; 275 NW2d 484 (1979). There, the Supreme Court held that a physician may be prosecuted for unlawful delivery of controlled substances which are dispensed outside of the course of professional practice or research. Whether or not the physician was acting in good faith in the course of professional practice or research is a question of fact. *Alford*, pp 585-589.

The defendant doctor in *Alford, supra,* was charged with having unlawfully delivered 120 capsules containing amphetamine and 103 capsules containing barbiturate. The defendant doctor in *People v Berg*, 85 Mich App 639; 272 NW2d 167 (1978), *lv den* 406 Mich 900 (1979), was charged with having unlawfully delivered 1,000 phendimetrazine tablets for $500, 1,000 amphetamine capsules for $500 and 7,000 amphetamine capsules for $3,350. On appeal in both the *Berg* and *Alford* cases, denial of the motion to quash the information was affirmed.

The crucial determination in this case was whether or not defendant was acting in good faith in the course of his professional practice when he made these contested prescriptions. The evidence in this case is not comparable to that produced in the above-cited cases. On more than one occasion Dr. Sun prescribed drugs in a less potent dosage,

or else he prescribed a less harmful and altogether different drug than what was requested, and, the prescriptions were few in number and quite small in amount. Moreover, defendant has pointed out that the alleged ailments for which he prescribed medicine were of such a nature that physical examinations would provide little help. Some of the prescribed medicines are commonly used to treat nervousness and insomnia, problems for which a clinical evaluation would ordinarily be employed. Defendant has contended that he made such clinical evaluations. Given this evidence, we are constrained to agree with Justice LEVIN's opinion in *Alford, supra,* that, "It does not follow that because a physician may not traffic in drugs he can be prosecuted for simple departures from generally accepted standards of professional practice and ethics". *Alford,* p 593. We recognize that at some point, the failure to maintain professional standards may constitute more than "simple departures" from accepted standards in the medical profession. And, while we discourage and disapprove of those practices of the defendant herein which approach that degree of laxity, we hold that the evidence produced in this case does not establish defendant's intent to traffic in drugs and distribute them in bad faith for a nonmedical purpose. Because the people's case failed in this respect, the trial court erred reversibly in denying defendant's motion for a directed verdict.

Reversed.