*In re* WAYNE COUNTY PROSECUTOR

Docket No. 61067. Submitted October 7, 1982, at Detroit.—Decided December 7, 1982.

Joseph W. Rucker, Sr., was indicted by a grand jury on one count of Medicaid fraud. Evidence adduced at the preliminary examination showed that defendant operated a medical clinic and treatment center and that new Medicaid patients were routinely given a battery of tests prior to seeing a doctor and that cash-paying patients were not routinely given the tests. Medicaid regulations provide that only tests necessary for diagnosis are compensable. The examining magistrate refused to bind defendant over for trial. The people brought an action for superintending control in the Wayne Circuit Court and Richard D. Dunn, J., granted superintending control ordering the magistrate to bind defendant over for trial. Defendant appealed. *Held:*

Submitting bills for Medicaid payment with the representation that the tests performed were necessary for diagnosis when, in fact, they were not is a fraudulent representation punishable under the Medicaid False Claim Act. The grant of superintending control was proper.

Affirmed.

1. FRAUD — MEDICAID FRAUD — CRIMINAL LAW.

The elements of Medicaid fraud are: 1) a claim; 2) made, presented, or caused to be made or presented by the accused to the state or its agent; 3) under the Social Welfare Act; 4) which is false, fictitious, or fraudulent; and 5) the accused knows the claim is false, fictitious, or fraudulent; claims for noncompensable services are fraudulent claims (MCL 400.607; MSA 16.614[7]).

2. FRAUD — MEDICAID FRAUD — CRIMINAL LAW.

Submitting bills for Medicaid payment with the representation that the tests performed were necessary for diagnosis when, in fact, they were not is a fraudulent representation punishable

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 79 Am Jur 2d, Welfare Laws §§ 38, 112.

under the Medicaid False Claim Act (MCL 400.601 *et seq.;* MSA 16.614[1] *et seq.).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Edwin M. Bladen* and *Edward A. Servitto, Jr.,* Assistants Attorney General, for the people.

*Culpepper & Sorise* (by *W. Otis Culpepper* and *Domnick J. Sorise),* for defendant.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

N. J. KAUFMAN, J. The defendant, Joseph W. Rucker, Sr., was indicted by a grand jury on one count of Medicaid fraud. MCL 400.607; MSA 16.614(7). After a preliminary examination in Detroit Recorder's Court, examining magistrate Clarence Laster, Jr., dismissed the indictment. The prosecution applied for an order of superintending control in the Wayne County Circuit Court. Chief Judge Richard D. Dunn granted the order, directing Judge Laster to vacate the dismissal and bind the defendant over for trial. Proceedings have been stayed pending this appeal from Judge Dunn's order.

The issue in the case centers on the applicability of the Medicaid False Claim Act, MCL 400.601 *et seq.;* MSA 16.614(1) *et seq.,* to the defendant's conduct. The applicable section reads:

"(1) A person shall not make or present or cause to be made or presented to an employee or officer of the state a claim under Act No. 280 of the Public Acts of 1939, as amended, upon or against the state, knowing the claim to be false, fictitious, or fraudulent.

"(2) A person who violates this section is guilty of a felony, punishable by imprisonment for not more than

4 years, or by a fine of not more than $50,000.00, or both." MCL 400.607; MSA 16.614(7).

Nurses at Dr. Rucker's clinic administered routine tests on new Medicaid patients before a doctor met with the patients. These tests were not routinely administered to cash-paying patients. The tests were not part of the diagnostic process, nor was there a determination that the patient needed the tests. They were part of a routine screening process not involving individualized medical judgment.

Medicaid regulations provide that only those tests necessary for diagnosis may be billed to Medicaid.[1] Dr. Rucker submitted bills to Medicaid for payment, representing that these tests were services performed pursuant to diagnoses. The defendant argues that, although some of the tests may have been unnecessary, it is not a crime to render unnecessary medical services. Additionally, the defendant argues that a doctor's subjective determination of "necessity" must be respected.

The prosecution does not dispute this. The prosecution's argument is not that "unnecessary" services are criminal. Instead, the prosecution contends that it is fraudulent to bill Medicaid for services when the billing doctor knows the requisite determination of eligibility (necessity) has not been met.[2] Thus, the prosecution does not seek to

---

[1] This requirement is also implicit in the federal enabling statute. See 42 USC 1320c-9(a)(1).

Additional regulations allow payment for routine screening tests on patients under the age of 21. The claims concerned in this action involve patients over that age.

[2] In proceedings below the prosecutor argued:

"Specifically, Joseph W. Rucker, Sr., in billing the Medicaid program indicated that laboratory tests and medical services had been provided to Medicaid recipients as a result of a specific diagnosis implying medical necessity, when in truth and fact the tests and services *had not been provided pursuant to a diagnosis,* but rather as

define the ethical practice of medicine.[3] The prosecution's focus is on who will pay for those services, Medicaid or another source.

In his opinion denying the bind-over, the examining magistrate stated:

> "It is readily noted, of course, that the statute does not, per se, prohibit the rendering of unnecessary services by a medical provider. It is apparent that the people would have us read it as though it does. In other words, it seems that the court is being asked to 'add' words of the following effect to the words of the statute —'or knowing that the services for which claim is made were unnecessary'. The court cannot do this."

Under rules of statutory construction, the magistrate determined that he could not "add" language to the clear wording of the statute. Even if a "necessary services" term were added, the magistrate reasoned, such a subjective term would not be compatible with the need for precision in criminal statutes. Until "necessary" could be defined, there could be no criminal prosecution for fraudulently representing that the services were necessary.

We agree with the prosecution that the magistrate misconstrued the argument. We also agree that the magistrate was obligated to bind the defendant over for trial. The elements of the crime are:

1. There must be a claim;

---

part of a routine screening procedure which is not reimbursable under the Medicaid program. Submitting claims for laboratory tests and medical services, indicating that the tests and services were medically necessary *when in fact no such determination was* made, is conduct violative of the Michigan Medicaid False Claim Act, *supra."* (Emphasis added.)

[3] See 42 USC 1395.

2. Which the accused makes, presents, or causes to be made or presented to the state or its agent;

3. The claim must be made under the Social Welfare Act, 1939 PA 280; MCL 400.1 *et seq.;* MSA 16.401 *et seq.;*

4. The claim is false, fictitious, or fraudulent;

5. And the accused knows the claim is false, fictitious, or fraudulent.

The prosecution produced records showing that claims for batteries of general lab tests performed on Medicaid patients were submitted to the state through the defendant's billing agency. The first three elements of the crime were therefore readily established.

Claims submitted for noncompensable services are fraudulent claims. *United States v Winkle,* 587 F2d 705, 708-709 (CA 5, 1979), *cert den* 444 US 827; 100 S Ct 51; 62 L Ed 2d 34 (1979) (Medicare fraud; billing unnecessary tests); *United States v Smith,* 523 F2d 771 (CA 5, 1975) (Medicare fraud; billing nonmedical expenses). *Cf. People v American Medical Centers of Michigan, Ltd,* 118 Mich App 135; 324 NW2d 782 (1982) (Medicaid fraud; billing for services not performed).

To support their contention that the defendant had submitted claims for services for which he could not have been compensated, the prosecution introduced evidence which indicated that the claims were for either medically unnecessary services or for services in the nature of general physical examinations. Neither of these types of services are reimbursable. Specifically, three witnesses testified that upon seeking treatment for certain identified ailments as Medicare/Medicaid patients at the defendant's office they were, before seeing the defendant, required to submit to a battery of general tests. The testimony of two

expert witnesses, Dr. Eugene Rogers and Dr. Gary Gazella, indicated that one could not determine what diagnostic tests would be necessary to administer unless they had first seen the patient. Further Dr. Gazella testified that of the 40 tests administered to Nancy Frankowski (for which the state was subsequently billed) he could find only three that may have been related to the treatment of her ailment. Additionally, he testified that the tests given to various Medicare/Medicaid patients were in the nature of general screening procedures.

From this testimony it could be concluded that among the tests for which the defendant billed the state were tests done either without regard to medical necessity or in the nature of general laboratory screening procedures not performed pursuant to a specific diagnosis by the defendant. As noted earlier, these types of services were not the sort for which the state would provide compensation. Therefore, the element of submitting false, fictitious, or fraudulent claims was established by showing that the defendant had submitted claims for either unnecessary medical services or routine screening procedures, neither of which are reimbursable by the state.

As to the final element of the crime, namely that the accused must know the claim to be false, fictitious, or fraudulent, MCL 400.602(c); MSA 16.614(2)(c) defines "knowing" and "knowingly" as meaning that:

> "[A] person is aware of the nature of his conduct and that his conduct is substantially certain to cause the intended result."

To support a finding of this element it was shown that the defendant had received a copy of

the manual containing Medicaid regulations. The defendant voluntarily participated in the program. By participating in the program, he utilized the procedures outlined in the manual. Further, it was shown that the defendant had authorized the submission of claims for the services described above. Certainly the defendant could not blind himself as to what the manual indicated were excluded services. *United States v Evans,* 559 F2d 244 (CA 5, 1977). His participation in the program, his possession and utilization of the manual, and his authorization of the billings for noncompensable services all provide factual support for the inference that defendant submitted claims which he knew to be false. Therefore the final element of the crime was established.

Submitting bills for Medicaid payment with the representation that the tests performed were necessary for diagnosis when, in fact, they were not is a fraudulent representation punishable under the criminal law.

The order for superintending control is affirmed.