PEOPLE v DOWNES

Docket No. 97494. Submitted October 13, 1987, at Lansing. Decided
    December 23, 1987.

George Downes, a physician, was bound over, following a prelimi-
    nary examination, on four counts of delivery of controlled
    substances. The Oakland Circuit Court, Hilda R. Gage, J.,
    quashed the information and dismissed the charges, holding
    that the magistrate abused his discretion in binding defendant
    over because there was no evidence of bad faith. The people
    appeal.

The Court of Appeals *held:*

A physician may be prosecuted for unlawful delivery of a
    controlled substance dispensed outside the course of profes-
    sional practice or research. The standard for lawful delivery is
    that the doctor make an honest or good faith effort to treat and
    prescribe in compliance with an accepted standard of medical
    practice. The evidence at the preliminary examination did not
    establish bad faith or criminal intent.

Affirmed.

1. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — EVIDENCE.

A magistrate at a preliminary examination need not determine a
    defendant's guilt beyond a reasonable doubt, but there must be
    evidence on each element of the crime charged or evidence
    from which such elements may be inferred.

2. CONTROLLED SUBSTANCES — PHYSICIANS AND SURGEONS — CRIMI-
    NAL LAW.

A physician may be prosecuted for unlawful delivery of a con-

REFERENCES

Am Jur 2d, Criminal Law §§ 411-413.

Am Jur 2d, Physicians, Surgeons, and Other Healers §§ 394, 395.

Wrongful or excessive prescription of drugs as ground for revoca-
    tion or suspension of physician's or dentist's license to practice.
    22 ALR4th 668.

Federal criminal liability of licensed physician for unlawfully pre-
    scribing or dispensing "controlled substance" or drug in violation
    of the Controlled Substances Act (21 USCS secs. 801 et seq.). 33
    ALR Fed 220.

trolled substance dispensed outside the course of professional practice or research; the standard for lawful delivery is that the doctor make an honest or good faith effort to treat and prescribe in compliance with an accepted standard of medical practice.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Michael J. Modelski,* Assistant Prosecuting Attorney, for the people.

*Richard M. Lustig,* for defendant.

Before: BEASLEY, P.J., and MACKENZIE and R. P. HATHAWAY,* JJ.

PER CURIAM. Following a single preliminary examination, defendant, a physician, was bound over to circuit court on two separate informations charging a total of four counts of unlawfully prescribing diazepam (Valium) and ethchlorvynol (Placidyl), MCL 333.7401(1) and (2)(c); MSA 14.15(7401)(1) and (2)(c). The circuit court granted defendant's motion to quash both informations and dismissed the cases. The people appeal as of right. We affirm.

At the preliminary examination, Officer Donald Ochadleus testified that he went to defendant's office with an informant on February 26, 1985, in order to purchase a prescription for drugs. After a receptionist inquired as to drug allergies, Ochadleus was seen by defendant. Defendant asked Ochadleus what the problem was, and Ochadleus reported that he had trouble with his nerves and difficulty sleeping. Defendant did not attempt to clarify the nature of the sleeping problems, but did ask if the nerve problem was work-related. Defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dant then asked Ochadleus what he wanted prescribed; Ochadleus told defendant he wanted Valium and Placidyl. Finally, defendant asked what color (signifying strength) Valium and Placidyl Ochadleus wanted. When Ochadleus requested the stronger dosages of each, defendant asked if Ochadleus had taken the stronger Valium before and warned that both were "very strong" and that Ochadleus might have difficulty finding a pharmacy to fill the Placidyl prescription. He nevertheless wrote a prescription for sixty Valium "for severe tension" and thirty Placidyl. Ochadleus paid defendant $50 in cash, which defendant put in his pants pocket. Defendant never performed any tests or asked any other questions regarding Ochadleus' health. The entire transaction with defendant took nine minutes. The informant was present throughout.

Ochadleus returned to defendant's office by himself on April 12, 1985. Defendant again wrote prescriptions for Placidyl and Valium, but reduced the strength on both prescriptions. Defendant did not ask how Ochadleus felt and did not perform any tests. Ochadleus paid defendant $25 in cash, which defendant put in his pants pocket.

Ochadleus next visited defendant's office on May 21, 1985. This time defendant asked Ochadleus how he was and asked if he wanted "the same things as before." When Ochadleus said yes, defendant wrote another prescription for Valium and Placidyl. Ochadleus paid defendant $25 in cash, which defendant put in his pocket. Ochadleus' health was never discussed and no tests were performed. This transaction, which took no more than two minutes, formed the basis of one of the informations filed against defendant.

Ochadleus went to defendant's office again on August 16, 1985. This time, defendant "asked me

if I could not take so many placidils [sic] and valiums and he interrupted himself in a sentence and assured me that he would continue writing scripts for the medication if I needed them." Defendant then proceeded to write a prescription for Placidyl and Valium in the same amount as before. Again, Ochadleus' health was not discussed and no tests were performed. Ochadleus paid defendant $25, which defendant put in his pants pocket. This transaction forms the basis of the second information against defendant.

Ochadleus testified that, during the visits, defendant never inquired as to whether the medication was causing adverse effects and never took Ochadleus' blood pressure or checked his heart rate. Ochadleus once asked for a prescription for Dilaudid, which was refused. The longest visit was the nine-minute initial consultation.

Dr. Robert G. Niven, a psychiatrist, testified as an expert witness. He said that it was neither standard nor good medical practice to prescribe medications for generalized sleeping problems and nerve problems with limited examinations and information. He refused, however, to speculate on defendant's motive for prescribing in the absence of an examination and thorough patient history. Following this testimony, defendant was bound over on all four counts.

In binding over an accused, the magistrate is not required to find guilt beyond a reasonable doubt, but there must be evidence on each element of the crime charged or evidence from which those elements may be inferred. *People v Sesi,* 101 Mich App 256, 262; 300 NW2d 535 (1980), lv den 411 Mich 1077 (1981). In *People v Alford,* 405 Mich 570; 275 NW2d 484 (1979), the Court held that a physician may be prosecuted for unlawful delivery of controlled substances which are dispensed out-

side the course of professional practice or research. 405 Mich 589. The standard required in determining whether the physician's actions were in the course of professional practice or research is whether the doctor made an "honest" or "good faith" effort to treat and prescribe in compliance with an accepted standard of medical practice. See *Alford, supra,* pp 588-589 and 589, n 7.

In ruling on defendant's motion to quash, the circuit court in this case found that the magistrate abused his discretion in binding over defendant because there was no evidence that defendant's actions were in bad faith. The prosecutor claims this was error. We disagree. The evidence at the preliminary examination established that defendant's actions were not good medical practice. There was no proof, however, that defendant acted in bad faith. The people's expert persistently refused to comment on defendant's motive in dispensing the prescriptions. On one occasion defendant prescribed drugs in a less potent dosage than requested, and on another he refused to prescribe a different drug requested by Ochadleus. As stated by this Court in *People v Sun,* 94 Mich App 740, 744; 290 NW2d 68 (1980), lv den 409 Mich 859 (1980):

> [W]e are constrained to agree with Justice LEV-IN's opinion in *Alford, supra,* that, "It does not follow that because a physician may not traffic in drugs he can be prosecuted for simple departures from generally accepted standards of professional practice and ethics". *Alford,* p 593. We recognize that at some point, the failure to maintain professional standards may constitute more than "simple departures" from accepted standards in the medical profession. And, while we discourage and disapprove of those practices of the defendant herein which approach that degree of laxity, we

hold that the evidence produced in this case does not establish defendant's intent to traffic in drugs and distribute them in bad faith for a nonmedical purpose.

As in *Sun,* the record in this case establishes departures from accepted standards of medical practice but does not establish defendant's criminal intent. We therefore affirm the decision of the circuit court.

Affirmed.