PEOPLE v ORZAME

PEOPLE v ORZAME & ORZAME, MDS, PLLC

Docket Nos. 194559, 194566. Submitted February 18, 1997, at Grand Rapids. Decided July 15, 1997, at 9:25 A.M.

Gabriel S. Orzame, M.D., and Orzame & Orzame, M.D.S., P.L.L.C., were charged in the 5th District Court with multiple counts of Medicaid fraud, health-care fraud, unlawfully dispensing controlled substances, conspiring to violate the Medicaid False Claim Act and the Health Care False Claim Act, and conspiring to unlawfully deliver controlled substances; Dr. Orzame was additionally charged with multiple counts of unlawfully dispensing or delivering controlled substances. The charges were filed after agents of the health-care fraud division of the Attorney General's office visited a walk-in, urgent care clinic operated by the defendants, posed as persons covered by Medicaid or insurance from Blue Cross and Blue Shield of Michigan (BC/BSM), feigned sickness, and received or did not receive treatment and medication that were billed to Medicaid or BC/BSM. After a preliminary examination, the prosecution voluntarily dismissed some of the controlled substances charges against Dr. Orzame, and the court, Daniel R. Deja, J., bound over the defendants for trial on three counts of fraud involving a Medicaid billing for an injection that was never received, a BC/BSM billing for services for which an agent had paid cash, and a BC/BSM billing for services for an agent who did not visit the clinic but who sent another agent to pick up a prescription for the first agent, bound over the defendants on the counts alleging conspiracy to violate the Medicaid and Health Care False Claim Acts, bound over the defendants on a single count of unlawfully delivering a controlled substance, but refused to bind over on the remaining counts. The Berrien Circuit Court, Ronald J. Taylor, J., affirmed the decision of the district court. The prosecution appealed by leave granted with respect to each defendant, and the appeals were consolidated.

The Court of Appeals *held*:

1. Failure to bill Medicaid or a health-care insurer in accordance with the coding guidelines of Medicaid or the health-care insurer, by itself, may constitute knowingly filing a false claim under § 7(1) of the Medicaid False Claim, MCL 400.607(1); MSA 16.614(7)(1), or

§ 3(3) of the Health Care False Claim Act, MCL 752.1003(3); MSA 28.547(103)(3). In this case, the district court abused its discretion in refusing to bind over the defendants on four counts of Medicaid fraud involving allegations that the defendants performed minimal services but billed under codes designated for more detailed or expanded patient history and examination.

2. Allegations of Medicaid or health-care fraud in seven counts, and evidence at the preliminary examination in support thereof, that the defendants added false information to the medical charts of agents, i.e., indicated temperature and blood pressure readings when none were taken, were sufficient to bind over the defendants on those counts. The district court abused its discretion in refusing to bind over on those counts.

3. The district court abused its discretion in binding over on the count involving alleged double billing inasmuch as the check sent by BC/BSM to the agent involved remained uncashed in the agent's file at the defendants' office because it could not be delivered to the bogus address given by the agent.

4. The district court did not abuse its discretion in refusing to bind over on twenty-five counts of Medicaid or health-care fraud. The prosecution failed to provide sufficient evidence of false claims with respect to those counts in view of the broad language of the billing codes involved and the discretion afforded thereunder to medical providers.

5. The record does not support the prosecution's contention that the district court failed to employ the "probable cause" standard in making its bindover decision.

6. The evidence at the preliminary examination did not indicate that the defendants, in prescribing or dispensing medication, acted in bad faith or intended to prescribe or dispense for nonmedical purposes. The district court therefore did not abuse its discretion in refusing to bind over on the counts alleging unlawful distribution of controlled substances or conspiracy to unlawfully distribute controlled substances, but abused its discretion in binding over on the count alleging that Dr. Orzame unlawfully distributed a controlled substance in allowing one agent to pick up another agent's prescription.

Reversed in part, affirmed in part, and remanded for further proceedings.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David G. Edick* and

*Michael J. Fraleigh,* Assistant Attorneys General, for the people.

*Taglia, Fette, Dumke, Passaro & Kahne, P.C.* (by *Paul A. Taglia* and *L. A. White*), for the defendants.

Before: MURPHY, P.J., and MARKEY and A. A. MONTON*, JJ.

PER CURIAM. The prosecution appeals by leave granted the trial court's April 12, 1996, order affirming the district court's refusal to bind over defendants Gabriel Sagun Orzame and Orzame & Orzame, M.D.S, P.L.L.C., on numerous counts of Medicaid and health-care fraud, MCL 400.607(1); MSA 16.614(7)(1) (Medicaid False Claim Act), and MCL 752.1003; MSA 28.547(103) (Health Care False Claim Act), unlawfully dispensing and delivering controlled substances, MCL 333.7401(2)(g); MSA 14.15(7401)(2)(g) (controlled substances act), and conspiracy to deliver controlled substances, MCL 750.157a; MSA 28.354(1). We reverse in part, affirm in part, and remand.

Defendant Gabriel S. Orzame, M.D., is a licensed physician who, along with his wife Dilda D. Orzame, M.D., operates two medical facilities in Berrien County for defendant Orzame & Orzame, M.D.S., a professional limited liability company. The charges in these consolidated cases arose from the medical services and drug prescriptions defendant Dr. Orzame provided to six undercover agents working for the Michigan Attorney General's health-care fraud division who were assigned to investigate his walk-in

---

* Circuit judge, sitting on the Court of Appeals by assignment.

clinic and urgent care facility known as the Napier CliniCare in Benton Harbor.

During the investigation, the agents made numerous visits to defendant Dr. Orzame's walk-in clinic between late 1994 and early 1995, presented themselves as patients under false names, posed as a Medicaid recipient or a Blue Cross/Blue Shield of Michigan (BC/BSM) insurance card holder, and pretended to be suffering from a variety of ailments, including recurring migraine headaches, anxiety, insomnia, strained or pulled muscles, and the common cold. All of the counts filed against defendants arose from the investigation, and, therefore, strictly involved patients with fabricated symptoms. Nonetheless, defendant Dr. Orzame treated the agents and submitted bills to Medicaid or BC/BSM for reimbursement.

As a result of the investigation, both defendants were charged with twenty-seven counts of Medicaid fraud (counts 1-27), thirteen counts of health-care (BC/BSM) fraud (counts 28-40), as well as several counts of conspiracy to violate the Medicaid False Claim Act, conspiracy to violate the Health Care False Claim Act, and conspiracy to deliver controlled substances in violation of the Public Health Code (counts 76-78 in defendant Dr. Orzame's case and counts 41-43 in the case against defendant Orzame & Orzame, M.D.S.). Defendant Dr. Orzame additionally was charged with thirty-five counts of dispensing or delivering controlled substances (counts 41-75).

A preliminary examination was held on four separate days in the district court, where the six undercover agents specifically testified concerning their respective staged visits to defendant Dr. Orzame's

clinic. The prosecution also presented the expert testimony of Dr. Giovannino Perri, employed by the Michigan Department of Social Services, who administers the Medicaid program, conducts audits of providers of Medicaid services, and specifically reviews medical records to determine whether providers are in compliance with Medicaid policy, rules, and procedures. After reviewing the defendants' files regarding the special agents' visits to the clinic, Dr. Perri concluded that defendants could not provide sufficient documentation to support the billing codes they used for the agents' visits. Because it was improper to bill Medicaid or BC/BSM without first having adequate documentation in the patient's chart, Dr. Perri concluded that defendants had submitted fraudulent claims to the state for reimbursement and had unnecessarily and in bad faith dispensed controlled substances.

Defendants also presented their expert, Dr. Norberto S. Portugal, a physician qualified as an expert with respect to the standard of practice for walk-in, urgent care clinics. Dr. Portugal testified that the standard of practice was lower for a walk-in clinic because these clinics typically treated many patients seeking immediate symptomatic relief and treatment rather than detailed or long-term treatment as regular or established patients. Dr. Portugal concluded that defendant Dr. Orzame acted within the required standard of care regarding each agent, with respect to both the services provided and the medications prescribed.

After the preliminary examination, the prosecution voluntarily dismissed without prejudice counts 49-50, 55, 56, 63, 64, 70, and 75 regarding the issuance of

prescription medications. The district court then opined from the bench that although defendants may have been careless and negligent when documenting and billing for the services they rendered, contrary to the applicable coding manuals, defendants' behavior fell short of intentionally defrauding BC/BSM and Medicaid. Of the forty counts of alleged fraud, the district court bound defendants over on only three counts: count 19, involving a December 1994 Medicaid billing for an injection that the agent never received, count 28, for a December 1994 BC/BSM billing when the agent had previously paid cash for the services rendered, and count 31, for the January 1995 BC/BSM billing for services rendered to one agent when she in fact never visited the clinic but had another agent pick up her prescription. The district court found that these three counts alone involved sufficient evidence for a jury to find an intent to defraud. The court also bound defendants over on the conspiracy counts involving the intent to violate the Medicaid False Claim Act and the Health Care False Claim Act, including counts 41 and 42 against defendant Orzame & Orzame, and counts 76 and 77 against defendant Dr. Orzame.

Finally, the district court opined that a violation of the controlled substances act required more than the carelessness and bad judgment that was evident in the present case. Because there was no evidence of an intent to traffic in drugs or distribute them in bad faith for a nonmedical purpose, with one exception in count 66 where defendant Dr. Orzame delivered a prescription for Fiorinal and Ambien to one agent on another agent's behalf, the district court refused to bind defendants over on any of the remaining drug counts, including the conspiracy charge.

The prosecution appealed to the circuit court, which, after hearing oral arguments, affirmed the district court's decision. The prosecution now appeals to this court by leave granted. We reverse in part and affirm in part.

I

A

The prosecution first argues that the district court abused its discretion by failing to bind over defendants on the Medicaid and health-care fraud counts. We agree in part. A magistrate's ruling that alleged conduct falls within the scope of a criminal statute is a question of law reviewed for error, and a decision to bind over a defendant is reviewed for abuse of discretion. *People v Thomas*, 438 Mich 448, 452; 475 NW2d 288 (1991). In reviewing the district court's decision to bind over a defendant for trial, a circuit court must consider the entire record of the preliminary examination, and it may not substitute its judgment for that of the magistrate. Reversal is appropriate only if it appears on the record that the district court abused its discretion. *People v Cotton*, 191 Mich App 377, 384; 478 NW2d 681 (1991); *People v Hammond*, 161 Mich App 719, 721; 411 NW2d 837 (1987). An abuse of discretion is found only where an unprejudiced person, considering the facts upon which the court acted, would say there was no justification or excuse for the ruling. *People v McAlister*, 203 Mich App 495, 505; 513 NW2d 431 (1994). Similarly, this Court reviews the circuit court's decision de novo to determine whether the district court abused its discretion. *People v Flowers*, 191 Mich App 169, 174; 477 NW2d 473 (1991).

The district court must bind the defendant over for trial if, at the conclusion of the preliminary examination, the district court finds "probable cause" to believe that the defendant committed the crime. Probable cause exists where the court finds a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious person to believe that the accused is guilty of the offense charged. MCL 766.13; MSA 28.931; MCR 6.110(E); *People v Woods*, 200 Mich App 283, 288; 504 NW2d 24 (1993); *People v Fiedler*, 194 Mich App 682, 689; 487 NW2d 831 (1992).

One of the statutes under which defendants were charged, § 7 of the Medicaid False Claim Act, MCL 400.607; MSA 16.614(7), provides as follows:

> (1) A person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, being sections 400.1 to 400.121 of the Michigan Compiled Laws, upon or against the state, knowing the claim to be false.

To establish a violation of the act, the prosecution must prove (1) the existence of a claim, (2) that the accused makes, presents, or causes to be made or presented to the state or its agent, (3) the claim is made under the Social Welfare Act, 1939 PA 280, MCL 400.1 *et seq.;* MSA 16.401 *et seq.*, (4) the claim is false, fictitious, or fraudulent, and (5) the accused knows the claim is false, fictitious, or fraudulent. *In re Wayne Co Prosecutor*, 121 Mich App 798, 801-802; 329 NW2d 510 (1982).

Section 3 of the Health Care False Claim Act, MCL 752.1003; MSA 28.547(103), provides as follows:

(3) A person shall not knowingly make or cause to be made a false statement or false representation of a material fact to a health care corporation or health care insurer for use in determining rights to health care benefits. Each claim which violates this subsection shall constitute a separate violation.

At issue here is whether defendants *knowingly* submitted *false claims* under these acts. Both acts define "false" as "wholly or partially untrue or deceptive," and "knowing" and "knowingly" as meaning

that a person is in possession of facts under which he or she is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the payment of a medicaid [or health care] benefit. "Knowing" and "knowingly" does not include conduct which is an error or mistake unless the person's course of conduct indicates a systematic or persistent tendency to cause inaccuracies to be present. [MCL 400.602(d) and (f); MSA 16.614(2)(d) and (f); MCL 752.1002(c) and (h); MSA 28.547(102)(c) and (h).]

According to the few pertinent Michigan cases, whether defendant treated patients according to standard practice has nothing to do with whether he "knowingly" submitted a "false claim" under the Medicaid and Health Care False Claim Acts, and a mere failure to bill in accordance with the Medicaid or the BC/BSM coding guidelines, by itself, may constitute a false claim punishable under criminal law. *People v Williamson*, 205 Mich App 592, 594-595; 517 NW2d 846 (1994); *In re Wayne Co Prosecutor, supra* at 802-804; cf. *People v American Medical Centers of Michigan, Ltd*, 118 Mich App 135, 152-153; 324 NW2d 782 (1982) (§ 7 involves a specific intent crime because it requires a mental state of "knowingly," and an act is

not done knowingly if it is done by mistake). Indeed, if a defendant contractually agrees to abide by billing procedures and has access to the applicable manuals and documentation controlling those procedures, deviations from the established procedures are presumed to be intentional or provide evidence that the defendant knew the submitted claims were false. See *People v Perez-DeLeon*, 224 Mich App 43; 568 NW2d 324 (1997); *In re Wayne Co Prosecutor, supra* at 803-804. Thus, if a physician possesses a Medicaid or a BC/BSM policy, procedures, and coding manual, that physician is expected not only to have knowledge of its contents and requirements but also to abide by them. See, e.g., *Williamson, supra; In re Wayne Co Prosecutor, supra.*

In *Perez-DeLeon, supra* at 46-51, this Court upheld the constitutionality of the Medicaid False Claim Act and the Health Care False Claim Act when they were challenged as being void for vagueness. Addressing the void for vagueness challenges, the Court specifically discussed the "knowing" and "knowingly" definitions contained in both acts and concluded that (a) the knowledge element relates to both the nature of a person's conduct *and* that the conduct is substantially certain to cause the payment of a Medicaid or health care benefit, and (b) that "[w]here, as here, claimants received a steady flow of government money pursuant to claims prepared by the claimants themselves, they have an affirmative obligation to check the accuracy of their claims to avoid mistakes." *Id.* at 50. Thus, the Court affirmed the defendants' convictions.[1]

---

[1] The Court also noted that the 1,357 instances of alleged incorrect billing that the defendants submitted established a "sufficiently persistent tendency on defendants' part to cause inaccuracies such that defendants

Also, in *In re Wayne Co Prosecutor, supra* at 803-804, this Court determined that because the defendant participated in the Medicaid program and possessed and utilized the provider's manual, the prosecution presented sufficient evidence to support the "knowing" and "knowingly" elements of the crime. This Court reasoned that the defendant could not be blind to what the manual indicated were excluded services with respect to billing reimbursement. *Id.* at 804. In *Williamson, supra* at 595, this Court again held that where a defendant contracts with the Department of Social Services to be bound by the terms of the Medicaid provider's manual, he is obligated to follow the billing procedures therein, and he is presumed to be on notice that he must conform to those guidelines:

> Under these circumstances, we conclude that defendant was on notice that he must conform with the guidelines set forth in the Medicaid provider's manual and that deviation from the billing practices set forth in the manual would constitute a false claim, punishable under § 7 of the Medicaid False Claim Act.

Also, an identifiable pattern or routine billing method, such as a dentist billing for a full x-ray series but only filming a partial series, may qualify as evidence of a "course of conduct" sufficient to overcome the allowance for mistakes or errors. See *Williamson, supra* at 596.

---

may be charged with constructive knowledge of the falsity of billing for office visits in connection with services rendered without patients being in the office." *Id.* at 51. Those 1,357 instances also satisfied the statutory definitions of "knowing." *Id.* at 50.

Applying these principles to the case at bar, we believe that where defendants may have used billing codes that did not accurately represent the actual services rendered to the agents at the clinic, defendants are presumed to be "in possession of facts under which [they are] aware or should be aware of the nature of [their] conduct." See MCL 400.602(f); MSA 16.614(2)(f), MCL 752.1002(h); MSA 28.547(102)(h). With respect to whether the claims were false,[2] or "wholly or partially untrue or deceptive," case law indicates that claims submitted for noncompensable services such as unnecessary tests and nonmedical expenses, as well as billings for services not performed, qualify as fraudulent claims. *In re Wayne Co Prosecutor, supra* at 802. Thus, when considering the evidence before the district court, this Court believes that sufficient evidence existed to bind defendants over with respect to counts 4, 8, 9, and 26. In these four counts, the prosecution alleged that defendants performed a minimal amount of medical services but utilized the codes designated for a more detailed or expanded history and examination, i.e., using codes 99203 and 99213, which required that the physician conduct an "expanded" or "detailed" history and examination, along with medical decision making of low complexity. For example, the agents testified that on occasion, defendant would engage them in small talk that was not medically related, not examine them, not inquire about their ailments, and yet would

---

[2] The prosecution argues that all of the forty claims defendants submitted were false because Dr. Orzame failed to perform the services he claimed they had performed, according to the billing codes used, had purposefully inserted false documentation on the agents' medical charts in some cases, and had double-billed Medicaid for other services that were rendered but that the agents had paid for in cash.

give them a renewed prescription for medication. Given the lack of any inquiry or examination, defendant should not have billed Medicaid under service codes 99203 and 99213, and the district court abused its discretion in failing to bind defendants over on counts 4, 8, 9, and 26. *McAlister, supra.*

With respect to the prosecution's charges that false information was added to the agents' medical charts, showing temperature and blood pressure examination results where no tests were performed, the evidence supported the assertion that defendants altered the records to justify the billing codes they used. Here, satisfaction of both the "falsity" and "knowledge" elements is much more apparent, and defendants' submission of the claims to the providers for these non-existent examinations satisfies the first three elements of the crime. *In re Wayne Co Prosecutor, supra* at 801-802. Accordingly, the district court abused its discretion because no justification or excuse existed for the court's determination that there existed no probable cause to bind over defendants on counts 13, 14, 15, 17, 18, 21, and 34. *McAlister, supra.*

Finally, with respect to defendants' alleged "double-billing," i.e., accepting cash payments for services rendered and then also billing the insurer, the trial court bound defendants over on only one instance of this in count 28. We find no merit in the prosecution's position on appeal because both of the agents who paid in cash for their visits were mailed refund checks by the appropriate insurer after defendants billed the insurers for the visits. Although neither agent received the checks because they gave the clinic bogus addresses, the reimbursement checks were

located in their files at defendants' office. We therefore find no justification for binding defendants over on count 28 regarding double-billing charges.

With respect to the remaining counts, we find that the prosecution failed to provide sufficient evidence to establish that the crime of submitting "false" claims has been committed. When accounting for the broad language of the provider codes and, thus, the discretion afforded a medical physician or participant, coupled with the discretion of the district court in a bindover determination, we find no abuse of discretion in the court's refusal to bind over on counts 1, 2, 3, 5, 6, 7, 10, 11, 12, 16, 20, 22, 23, 24, 25, 29, 30, 32, 33, 35, 36, 37, 38, 39, and 40.

B

The prosecution also asserts that the district court erred in failing to apply the "probable cause" standard to the evidence. We disagree. The district court noted, before reviewing the evidence presented at the preliminary examination, that it was required to find probable cause before binding defendants over for trial.[3] Also, when the district court bound defendants over for trial, it mentioned that it had probable cause to believe that in those limited instances, a crime had been committed and that defendants were the respon-

---

[3] The district court stated:

> Well . . . Well, the . . . this is a case where I keep going back to the standard . . . burden of proof at this level and that is we are here to determine if there is probable cause that an offense was committed and the Defendant committed the offense, is there a case, has a crime been committed and is it likely that the Defendant committed the crime.

sible offenders. Accordingly, we find no merit to the prosecution's assertions.

II

The prosecution also argues that the district court abused its discretion in failing to bind over defendants on the controlled substance counts and on the conspiracy to deliver controlled substance counts. We disagree.

The prosecution charged defendant Dr. Orzame with thirty-five counts of unlawful delivery, dispensing, and prescribing controlled substances in violation of the controlled substances act, MCL 333.7401; MSA 14.15(7401), by prescribing controlled substances without first conducting the necessary examinations and procedures to make certain that such medications were warranted. Defendants Dr. Orzame and Orzame & Orzame were also each charged with conspiracy to deliver a prescription for a controlled substance. Although the evidence at the preliminary examination may have established that defendants' actions did not constitute good medical practice, we find no proof that defendants acted in bad faith or that they intended to prescribe or dispense the medications in question for nonmedical purposes. See *People v Downes*, 168 Mich App 484, 485, 488-489; 425 NW2d 102 (1987), and *People v Sun*, 94 Mich App 740, 744; 290 NW2d 68 (1980), relying on Justice LEVIN's dissent in *People v Alford*, 405 Mich 570, 592-594; 275 NW2d 484 (1979).

According to Justice LEVIN,

[i]t does not follow that because a physician may not traffic in drugs he can be prosecuted for simple departures from generally accepted standards of professional practice and

ethics. Doctors not infrequently prescribe for patients who are not in their office, whom they have not examined, and over the telephone. Carelessness, bad judgment or malpractice is one thing; intent to traffic in drugs and distributing in bad faith for a non-medical purpose is [sic] quite another. [*Alford, supra* at 593-594.]

In determining that the district court abused its discretion in binding the defendant over for trial, this Court in *Downes, supra,* found no evidence that the defendant acted in bad faith and for a nonmedical purpose when the defendant prescribed Placidyl and Valium to an undercover agent without performing any tests or examinations or making any specific inquiries concerning the effects of and continued need for the medication. In *Sun, supra* at 744, this Court cited Justice LEVIN's dissent in *Alford, supra,* and added:

We recognize that at some point, the failure to maintain professional standards may constitute more than "simple departures" from accepted standards in the medical profession. And, while we discourage and disapprove of these practices of the defendant herein which approach that degree of laxity, we hold that the evidence produced in this case does not establish defendant's intent to traffic in drugs and distribute them in bad faith for a non-medical purpose.

Here, the prosecution failed to present any evidence to suggest that defendant Dr. Orzame acted with the intent to traffic in drugs and to distribute them without good faith or for nonmedical purposes. Despite the fact that the agents fabricated their ailments, the record supports the contention that defendant believed the agents' symptoms were real and that the medications he prescribed were effective. He counseled several agents regarding the addic-

tive nature of the drugs and recommended that they avoid certain medications for that reason. Furthermore, defendants' expert witness testified that defendant Dr. Orzame acted in accordance with established business practices for a walk-in, urgent care clinic, and that Dr. Orzame prescribed the lowest, least potent dosage of medication. Thus, defendant's possible carelessness, bad judgment, or malpractice did not rise to the level of drug trafficking and distributing in bad faith for a nonmedical purpose. *Alford, supra* at 593-594.

Along these same lines, we find that the district court abused its discretion in binding over defendant for trial on count 66 because, as with the other drug counts, there is no evidence to suggest that defendant Dr. Orzame delivered, for a nonmedical reason, one agent's prescription to another agent in light of the fact that the agents had previously told defendant that they were boyfriend and girlfriend, and where he assumed one was simply picking it up for the other. See *Downes, supra* at 489.

In conclusion, we find that the district court abused its discretion in failing to bind over defendants for trial on counts 4, 8, 9, 13, 14, 15, 17, 18, 19, 21, 26, 28, 31, and 34 because no justification or excuse existed for not binding them over in light of the evidence presented at trial and the case law set forth in *Williamson, supra,* and *In re Wayne Co Prosecutor, supra.* We also reverse the decision to bind over defendants on counts 28 and 66 because the court abused its discretion in finding that probable cause existed with respect to these charged offenses. Finally, we find no abuse of discretion regarding the

district court's decision regarding the unlawful delivery of controlled substance charges.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.