PEOPLE v HOLT

Docket No. 162801. Submitted July 7, 1994, at Lansing. Decided
     October 3, 1994, at 9:00 A.M. Leave to appeal sought.

     Les A. Holt, a dealer of used motor vehicle parts, was convicted
     by a jury in the Cass Circuit Court, Michael E. Dodge, J., of
     failing to record a purchase of used motor vehicle parts from a
     person who was not a licensed dealer. MCL 257.1352; MSA
     9.2705(22), MCL 257.1355; MSA 9.2705(25). The defendant ap-
     pealed.

          The Court of Appeals *held:*

          1. The crime of which the defendant was convicted is a strict
     liability offense that does not require proof of knowledge by the
     defendant that the parts in question were from a motor vehicle
     whose model year was the same as the year of the parts
     transaction or any of the five years immediately preceding. The
     trial court did not err in refusing to instruct the jury that such
     knowledge was required for conviction.

          2. MCL 257.1352; MSA 9.2705(22) provides fair notice of the
     conduct proscribed and is not so indefinite that it confers
     unstructured or unlimited discretion on the trier of fact to
     determine whether an offense has been committed. Therefore,
     it is not unconstitutionally vague.

          3. The defendant's failure to object or request a curative
     instruction forecloses appellate review of claimed improper
     remarks in the prosecutor's opening statement inasmuch as an
     objection or instruction could have cured any prejudice and
     manifest injustice will not result from a failure to review the
     .claimed misconduct.

          Affirmed.

1. AUTOMOBILES — DEALERS — FAILURE TO RECORD USED PARTS
     TRANSACTIONS — SCIENTER.

     The crime of failure to record a purchase or receipt of used motor
     vehicle parts does not require for conviction proof that a dealer

REFERENCES
Am Jur 2d, Constitutional Law § 424; Occupations, Trades, and
     Professions § 106.
See ALR Index under Automobile Dealers.

of used motor vehicle parts knew that the parts were from a motor vehicle whose model year was the same as the year of the parts transaction or any of the five years immediately preceding (MCL 257.1352, 257.1355; MSA 9.2705[22], 9.2705[25]).

2. AUTOMOBILES — DEALERS — FAILURE TO RECORD USED PARTS TRANSACTIONS — CONSTITUTIONAL LAW.

The statute that requires dealers of used motor vehicle parts to maintain records of purchase or receipt of used motor vehicle parts from persons other than licensed dealers is not unconstitutionally vague; the statute provides fair notice of the conduct proscribed and is not so indefinite that it confers unstructured or unlimited discretion on the trier of fact to determine whether an offense has been committed (MCL 257.1352; MSA 9.2705[22]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Margaret Mary Chiara,* Prosecuting Attorney, and *William E. Molner,* Assistant Attorney General, for the people.

*Dale S. Murney,* for the defendant.

Before: GRIFFIN, P.J., and MACKENZIE and F. X. O'BRIEN,* JJ.

GRIFFIN, P.J. Following a jury trial, defendant was convicted of one count of failing to record a transaction by a dealer of used motor vehicle parts, MCL 257.1352; MSA 9.2705(22) and MCL 257.1355; MSA 9.2705(25). He was sentenced to thirty months' probation, 180 days in jail and a $250 fine. Defendant now appeals as of right. We affirm and hold that the crime at issue is a strict liability offense for which knowledge is not an element.

I

This case arises out of defendant's business of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

buying and selling cars and auto parts as a licensed dealer. During a police investigation of a "chop shop," the police discovered that an engine and transmission from a stolen 1988 Chevrolet pickup truck had been sold to defendant in January 1992. In an attempt to gather evidence in the investigation, the police visited defendant's business to obtain records of the purchase. After questioning defendant about the transaction, the officers learned that defendant had purchased the parts for $250. Defendant, however, had failed to maintain a permanent record of the transaction as required by the used motor vehicle parts transaction act (UMVPTA), MCL 257.1351 *et seq.*; MSA 9.2705(21) *et seq.* Under the UMVPTA, a used motor vehicle parts dealer must complete a "record of transaction" form regarding any major component part purchased from an unlicensed person that is from a motor vehicle "manufactured in the current model year or the 5 model years immediately preceding the current model year."[1]

At trial, defendant moved to quash the information on the ground that the people had failed to prove that he had knowledge that the parts were from a motor vehicle manufactured in the current or five preceding model years. The trial court denied the motion, ruling that the crime at issue was a strict liability offense for which knowledge was not an element. Defendant renewed his argument following the close of proofs and requested the following jury instruction:

> You are further instructed that before you may return a verdict of guilty the prosecutor must prove beyond a reasonable doubt that the defendant knew that the used motor vehicle part was a component of a late model motor vehicle manufac-

---

[1] MCL 257.1352; MSA 9.2705(22).

tured in the current model year or in the five model years immediately preceding the current model year.

The trial court declined to give the requested instruction, citing its earlier ruling.

## II

Defendant first argues on appeal that the trial court erred in failing to give his requested instruction. Defendant asserts that criminal intent or knowledge must be an element of the offense because § 2 of the act does not require that every transaction be recorded. We disagree.

Jury instructions are to be reviewed in their entirety. There is no error requiring reversal if the instructions sufficiently protect the rights of the defendant and fairly present to the jury the issues to be tried. *People v Gaydosh,* 203 Mich App 235, 237; 512 NW2d 65 (1994); *People v Davis,* 199 Mich App 502, 515; 503 NW2d 457 (1993). Further, a trial court should not give a requested jury instruction that is unsupported by the law. *People v Smelter,* 175 Mich App 153, 155; 437 NW2d 341 (1989). Accordingly, it is not error for a trial court to refuse to give a jury instruction that adds an element to an offense that is not contained in the statute. *People v Jarman,* 140 Mich App 93, 97; 362 NW2d 900 (1985).

## A

Section 5 of the UMVPTA, MCL 257.1355; MSA 9.2705(25), makes it illegal for a used motor vehicle parts dealer to "[t]otally [fail] to record a transaction on a record of transaction form as required by section 2." Section 2 of the act specifies when a record of the transaction is required

together with the information that must be included on the transaction form:

(1) A dealer shall maintain a permanent record of each transaction concerning the buying or receiving of any used motor vehicle part from a person other than a licensee, on record of transaction forms provided for in subsection (5), legibly written in ink in the English language. Each record of transaction form shall be filled out in duplicate by the dealer or agent with 1 copy going to the customer, and 1 copy to be retained by the dealer. At the time a dealer receives or purchases a used motor vehicle part from a person other than a licensee, the dealer or agent shall accurately record all of the following information on a record of transaction form:

(a) A general description of the used motor vehicle part received or purchased.

(b) The vehicle identification number of the vehicle the used motor vehicle part came from.

(c) The state of origin of the used motor vehicle part.

(d) The date of the transaction.

(e) The name of the person conducting the transaction for the dealer.

(f) The name, date of birth, driver's license number or state of Michigan personal identification card number, and street and house number of the person with whom the transaction is being made, together with a legible imprint of the right thumb of the person with whom the transaction is made, or if that is not possible, then the left thumb or a finger of that person. . . .

(g) The price paid or to be paid by the dealer for the used motor vehicle part.

(h) The form of payment made to the customer. The dealer shall indicate the number of a check, money order, or bank draft.

(i) The signature of the person with whom the transaction is made. [MCL 257.1352; MSA 9.2705(22).]

The term "used motor vehicle part" is defined in § 1(i) of the act as "any major component part . . . of a late model motor vehicle for which a certificate of title and registration plate have been issued to a consumer or dealer." Further, the term "late model vehicle" is defined in § 1(c) of the act as a "motor vehicle manufactured in the current model year or the 5 model years immediately preceding the current model year." Thus, defendant's purchase of the engine and transmission in 1992 was covered under the act because the parts came from a 1988 model truck.

B

Although true strict liability crimes are not favored under the law, the Legislature may impose certain penalties regardless of the actor's intent or knowledge. See, e.g., *People v Quinn,* 440 Mich 178, 187-188; 487 NW2d 194 (1992); *People v Olson,* 181 Mich App 348, 352; 448 NW2d 845 (1989); *People v Abramczyk,* 163 Mich App 473, 478; 415 NW2d 249 (1987). Such statutes are usually enacted and sustained on grounds of necessity, primarily where the regulatory purposes of the statute would be frustrated by requiring the prosecutor to prove the actor's state of mind. *Quinn, supra* at 189 (citing *People v Avery,* 236 Mich 549, 552; 211 NW 349 (1926); *People v Hatinger,* 174 Mich 333, 335; 140 NW 648 (1913). Where an offense does not codify a common-law offense and the statute omits the element of mens rea, we examine the intent of the Legislature to determine the elements of the offense. *Quinn, supra* at 186.

C

MCL 257.1352; MSA 9.2705(22) and MCL 257.1355; MSA 9.2705(25) were enacted by the

Legislature as part of 1986 PA 119. A review of the pertinent legislative analysis[2] reveals that the statute was passed for the purpose of combating car theft:

> The incidence of car theft in Michigan has increased sharply in the last few years. Reportedly, the number of cars stolen in 1983 was 67,235 statewide, up 40% from the number five years ago; 1984 thefts reached an all-time high of 78,006, and 1985 thefts totaled 75,123. Some people believe that this situation is largely a result of organized car theft rings that take the stolen vehicles to "chop shop" operations where the cars are dismantled and their parts sold to bump shops and used parts stores. In order to combat this practice, it has been suggested that a "paper trail" be established to record used parts transactions. Arguably, a person who had to give specific information identifying himself or herself when selling a part would hesitate to trade in stolen parts, and investigating thefts would be easier if that information were kept by dealers and available to the police.

The bill sought to reduce car thefts by deterring dealers from buying stolen parts:

> By requiring used car parts dealers to keep records of their purchases, the bill would take a major step toward putting chop shops out of business and reducing car theft in this state. *Although no one ever admits to buying stolen articles, someone does, and in large numbers; in fact, it has been estimated that up to 50% of the cars going into Detroit-area salvage yards may have been stolen.* If a person selling used car parts had to produce specific personal information, however, such as his or her name, date of birth, address, driver's license number, and thumbprint, that person obviously would think twice before selling stolen parts. *Dealers also would be reluctant to trade in stolen parts*

---

[2] Senate Legislative Analysis, SB 58, June 20, 1986.

*if they could be criminally prosecuted for failing to record the required information.* In addition, having these records available for inspection would make it easier for the police to trace the buyers and sellers than it is now with the anonymous transactions that currently take place. [Emphasis added.]

In light of this legislative history, it is clear that § 2 was enacted to deter the trade in stolen auto parts by requiring dealers to inquire into the origin of used auto parts. By punishing a dealer for failing to record a transaction as required by § 2, the Legislature sought to prevent the purchase of stolen auto parts.

Consistent with this legislative purpose and intent, we hold that failing to record a transaction by a used motor vehicle parts dealer, MCL 257.1352; MSA 9.2705(22) and MCL 257.1355; MSA 9.2705(25), is a strict liability offense that does not require knowledge or criminal intent. A contrary determination would undermine a dealer's responsibility under § 2 to inquire into the origin of used auto parts and to ensure that the parts are not stolen.

Moreover, our construction is bolstered by the language of the act. We note that while knowledge is omitted as an element in § 5, knowledge is included in other provisions of the act. The omission of knowledge as an element in § 5 appears to have occurred as the result of a deliberate decision by the Legislature. Accordingly, because knowledge is not an element of the offense, the trial court did not err in failing to give defendant's requested jury instruction.

### III

Defendant next argues that his conviction

should be reversed because § 2 of the act is uncon-
stitutionally vague. Defendant alleges that a
dealer cannot determine the age of a used auto
part from its identification number, and therefore
compliance with the act is difficult or impossible.
This argument is without merit. The relevant
inquiry in assessing a vagueness challenge that
does not implicate First Amendment concerns is
whether a statute (1) provides fair notice of the
conduct proscribed, or (2) is so indefinite that it
confers unstructured or unlimited discretion on
the trier of fact to determine whether the offense
has been committed. *Woll v Attorney General,* 409
Mich 500, 533; 297 NW2d 578 (1980); *People v
Murphy,* 203 Mich App 738, 747-748; 513 NW2d
451 (1994). Further, we review a vagueness chal-
lenge in light of the facts of the case. *People v
Khoury,* 181 Mich App 320, 327; 448 NW2d 836
(1989), rev'd on other grounds 437 Mich 954 (1991);
*People v Cavaiani,* 172 Mich App 706, 714; 432
NW2d 409 (1988).

Contrary to defendant's assertion, the triggering
event under § 2 is whether the used part came
from a motor vehicle "manufactured in the cur-
rent model year or the 5 model years immediately
preceding the current model year" rather than the
age of the part. Thus, the statute requires that a
dealer inquire into the origin of a used auto part
before purchase to determine if the transaction
must be recorded. Under the facts of this case, § 2
provided fair notice of the proscribed conduct and
did not confer unlimited discretion on the trier of
fact to decide if defendant had committed an
offense. Defendant's argument that compliance
with the act is difficult or impossible is irrelevant
to this determination.

IV

Finally, defendant claims that the prosecutor

made improper comments during his opening statement that denied defendant. a fair trial. However, defendant failed to object or request a curative instruction at trial. A defendant's failure to object or request a curative instruction forecloses appellate review of improper remarks by the prosecutor unless the prejudicial effect of the remarks is so serious that no objection or instruction could have cured the prejudice or manifest injustice would result from failure to review the misconduct. *People v Buck,* 197 Mich App 404, 418; 496 NW2d 321 (1992); *People v Mack,* 190 Mich App 7, 19; 475 NW2d 830 (1991). After careful review of all of defendant's allegations of misconduct, we conclude that an objection or curative instruction could have cured any prejudice resulting from the prosecutor's remarks. Further, failure to review defendant's claims of misconduct would not result in manifest injustice.

Affirmed.