PEOPLE v PEREZ-DeLEON

PEOPLE v VELEZ-RUIZ

Docket Nos. 171788, 172757. Submitted February 5, 1997, at Lansing. Decided June 3, 1997, at 9:10 A.M. Leave to appeal sought.

Edgardo Perez-DeLeon, the office manager of Wanda Velez-Ruiz' medical practice, and Wanda Velez-Ruiz were jointly tried and convicted by a jury in the Ingham Circuit Court, Peter D. Houk, J., of filing false Medicaid claims, MCL 400.601 *et seq.*; MSA 16.614(1) *et seq.*, and of filing false health-care claims, MCL 752.1001 *et seq.*; MSA 28.547(101) *et seq.* Each defendant appealed, and their appeals were consolidated.

The Court of Appeals *held*:

1. The statutes under which the defendants were convicted provided fair notice of the conduct proscribed and therefore are not void under the constitution for vagueness. By their terms, the statutes proscribe the presentation of Medicaid or health-care claims with knowledge that the claims are false. Knowledge of the falseness of a claim and that the claim is substantially certain to cause the payment of a benefit may be actual or constructive. The statutes define "knowing" and "knowingly" to exclude conduct that is an error or a mistake, but to include a course of conduct that indicates a systematic or persistent tendency to cause inaccuracies to be present. The evidence presented against the defendants included 1,357 instances of billings for office visits in connection with services rendered without the patients being in the office. This extremely high number of similar inaccuracies shows a sufficiently persistent tendency on the defendants' part to cause inaccuracies such that the defendants may be charged with constructive knowledge of the falsity of the billings.

2. Any vagueness in the manuals setting the billing codes cannot lend support to the defendants' contention that the statutes are void for vagueness. The claim that the manuals are vague is relevant to the sufficiency of the evidence, not to the vagueness of the statutes.

3. Assuming, without deciding, that the offenses in this case are specific intent crimes, the trial court did not err in refusing to instruct the jury about specific intent because the trial court ade-

quately instructed the jury about intent by reading to the jury the statutory definitions of "knowing" and "knowingly."

4. The trial court did not err in admitting evidence of the 1,357 instances of erroneous billing. The evidence was relevant in terms of establishing the knowledge element of the offenses by showing a persistent tendency to cause inaccuracies to be present.

5. The trial court did not err in denying Velez-Ruiz' motion for a directed verdict. Viewed in a light most favorable to the prosecution, a rational trier of fact could have concluded that Velez-Ruiz was aware of her office's improper billing practices.

6. The trial court did not abuse its discretion in denying Velez-Ruiz' motions for severance and for a separate jury trial. The defendants' defenses were not mutually exclusive or irreconcilable, and Velez-Ruiz failed to submit an affidavit or make an offer of proof demonstrating that her substantial rights would be prejudiced and that severance was the necessary means of rectifying the potential prejudice. A separate trial was not necessary to preserve Velez-Ruiz' right to cross-examine Perez-DeLeon without incriminating herself. None of the admissions or statements of Perez-DeLeon that were admitted into evidence directly incriminated Velez-Ruiz.

7. The trial court did not abuse its discretion in refusing to order the prosecution's notes and records regarding a settlement with another physician be made available in discovery to Velez-Ruiz. Velez-Ruiz provided no clear explanation why the notes and records would be relevant to her defense.

8. Perez-DeLeon's allegations of ineffective assistance of counsel do not indicate that counsel's performance fell below an objective standard of reasonableness and that the representation so prejudiced Perez-DeLeon as to deprive him of a fair trial. Perez-DeLeon's claim of malicious prosecution is without merit. The statutes under which Perez-DeLeon was convicted proscribe the filing of false claims irrespective of whether the underlying services were medically necessary. Accordingly, Perez-DeLeon's claim that he could not be prosecuted because all the billings were for medically necessary services is without merit.

Affirmed.

1. CRIMINAL LAW — FALSE MEDICAID OR HEALTH-CARE CLAIMS — KNOWLEDGE.

Knowledge of the falseness of a Medicaid or health-care claim, for purposes of the statutes proscribing the making, presenting, or causing to be made or presented a claim for Medicaid or health-care benefits, may be actual or constructive (MCL 400.607[1],

400.602[f], 752.1003[1], 752.1002[h]; MSA 16.614[7][1], 16.614[2][f], 28.547[103][1], 28.547[102][h]).

2. CRIMINAL LAW — FALSE MEDICAID OR HEALTH-CARE CLAIMS — KNOWLEDGE — BILLING INACCURACIES.

An error or a mistake in the making, presenting, or causing to be made or presented a Medicaid or health-care claim does not constitute the filing of a false claim unless there is a system, method, or plan to cause inaccuracies, in which case knowledge of the falseness of the claims is actual, or a constant repetition of inaccuracies, in which case knowledge of the falseness of the claims is constructive (MCL 400.607[1], 400.602[f], 752.1003[1], 752.1002[h]; MSA 16.614[7][1], 16.614[2][f], 28.547[103][1], 28.547[102][h]).

3. CRIMINAL LAW — FALSE MEDICAID OR HEALTH-CARE CLAIMS — KNOWLEDGE — JURY INSTRUCTIONS.

A trial court properly instructs a jury about the knowledge element of the statutory offenses of filing a false Medicaid claim or filing a false health-care claim by reading to the jury the definitions of "knowing" and "knowingly" contained in the respective statutes (MCL 400.607[1], 400.602[f], 752.1003[1], 752.1002[h]; MSA 16.614[7][1], 16.614[2][f], 28.547[103][1], 28.547[102][h]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ronald W. Emery*, Assistant Attorney General, for the people.

State Appellate Defender (by *Robert J. Bretz*) and Edgardo Perez-DeLeon, in propria persona for Edgardo Perez-DeLeon.

*John F. Royal*, for Wanda Velez-Ruiz.

Before: O'CONNELL, P.J., and HOLBROOK, JR., and MARKMAN, JJ.

MARKMAN, J. Following a jury trial, defendants were convicted of filing false Medicaid claims, MCL 400.601 *et seq.*; MSA 16.614(1) *et seq.*, and false health-care claims, MCL 752.1001 *et seq.*; MSA 28.547(101) *et seq.* These convictions arose from defendants improperly billing Medicaid, Medicare, and Blue Cross and Blue

Shield of Michigan (BCBSM) for office visits when patients were not in the office. Defendant Perez-DeLeon, husband of defendant Velez-Ruiz and office manager of her medical practice, was sentenced to five years' probation with the first year to be served in jail and ordered to pay $17,169.34 in restitution. Defendant Velez-Ruiz, a doctor, was sentenced to five years' probation, 500 hours of community service and ordered to pay $38,340.63 in fines, restitution, and costs. Their appeals were consolidated. We affirm.

Defendants first argue that the statutes under which they were convicted were unconstitutionally vague. This Court has stated:

> A statute challenged on a constitutional basis is clothed in a presumption of constitutionality. Further, a court is obligated to construe a statute as constitutional unless its unconstitutionality is clearly apparent.
>
> A statute may be challenged for vagueness on three grounds: (1) it does not provide fair notice of the conduct proscribed; (2) it confers on the trier of fact unstructured and unlimited discretion to determine whether an offense has been committed; and (3) its coverage is overly broad and impinges on First Amendment freedoms. [*People v Hubbard (After Remand)*, 217 Mich App 459, 483-484; 552 NW2d 493 (1996) (citations omitted).]

This Court has further stated:

> It is a basic principle of due process that a legislative enactment is void for vagueness if the enactment does not provide fair notice of the conduct proscribed. To give fair notice of proscribed conduct, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. The statute cannot use terms that require persons of common intelligence to guess at the statute's meaning and differ regarding its application.[*Sanchez*

*v Lagoudakis*, 217 Mich App 535, 555; 552 NW2d 472 (1996) (citations omitted).]

This Court reviews vagueness challenges in light of the facts at issue. *People v Holt*, 207 Mich App 113, 121; 523 NW2d 856 (1994).

The Medicaid False Claim Act provides:

> A person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act . . . upon or against the state, *knowing* the claim to be false. [MCL 400.607(1); MSA 16.614(7)(1) (emphasis supplied).]

MCL 400.602(d); MSA 16.614(2)(d) defines "false" as "wholly or partially untrue or deceptive."
MCL 400.602(f); MSA 16.614(2)(f) defines the term "knowing":

> "Knowing" and "knowingly" means that a person is in possession of facts under which he or she is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the payment of a medicaid benefit. Knowing or knowingly does not include conduct which is an error or mistake unless the person's course of conduct indicates a systematic or persistent tendency to cause inaccuracies to be present.

The Health Care False Claim Act provides:

> A person shall not make or present or cause to be made or presented to a health care corporation or health care insurer a claim for payment of health care benefits *knowing* the claim to be false. [MCL 752.1003(1); MSA 28.547(103)(1) (emphasis supplied).]

MCL 752.1002(c); MSA 28.547(102)(c) defines "false" as "wholly or partially untrue or deceptive." MCL 752.1002(h); MSA 28.547(102)(h) gives essentially the

same definition for "knowing" as that in the Medicaid False Claim Act:

> "Knowing" and "knowingly" means that a person is in possession of facts under which he or she is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the payment of a health care benefit. "Knowing" or "knowingly" does not include conduct which is an error or mistake unless the person's course of conduct indicates a systematic or persistent tendency to cause inaccuracies to be present.

Defendants argue that the Medicaid False Claim Act and the Health Care False Claim Act are unconstitutional because they do not contain a mens rea element. Specifically, they contend that the definitions of "knowing" and "false" permit a finding of guilt on the basis of mere negligence, rather than a finding of a culpable mens rea. They argue that the knowledge element refers only to knowledge of the filing of a claim, not knowledge that the claim is fraudulent. They claim that the statutes improperly allow fraudulent intent to be presumed if a claim is determined to be false.

By their terms, these statutes proscribe presentation of a Medicaid or health-care claim with knowledge that the claim is false. MCL 400.607(1); MSA 16.614(7)(1) and MCL 752.1003(1); MSA 28.547(103)(1). "Intent and knowledge can be inferred from one's actions and, when knowledge is an element of an offense, it includes both actual and constructive knowledge." *People v American Medical Centers of Michigan, Limited*, 118 Mich App 135, 154; 324 NW2d 782 (1982). Therefore, it is not problematic that these statutes define "knowing" to include

"should be aware." Contrary to defendants' contention, this actual or constructive knowledge element does not relate solely to knowledge that a claim is filed. The knowledge element relates to both "the nature of his or her conduct *and* that his or her conduct is substantially certain to cause the payment of a [Medicaid or] health care benefit." In the context of the basic charges at issue—presenting a claim, knowing the claim to be false contrary to MCL 400.607(1); MSA 16.614(7)(1) and MCL 752.1003(1); MSA 28.547(103)(1)—the the "nature of his or her conduct" language in the "knowing" definitions must refer to falseness. Accordingly, the actual or constructive knowledge element of these offenses appropriately requires knowledge of both the falseness of a claim and that the claim is substantially certain to cause payment of a benefit.

The final sentence of both acts' definition of "knowing" states that "knowing" does not include "conduct which is an error or mistake . . . ." The "error or mistake" language expressly excludes innocent errors from the "knowing" definition. We believe that this exclusion was not strictly necessary, because innocent errors clearly would not otherwise be included within the scope of knowingly presenting a false claim.

The acts then exclude from this innocent errors exclusion circumstances where "the person's course of conduct indicates a systematic or persistent tendency to cause inaccuracies to be present." "Systematic" is defined as "having, showing, or involving a system, method, or plan." *Random House Webster's College Dictionary* (1992). "Persistent" is defined as "constantly repeated; continued." *Id.* A system,

method, or plan to cause inaccuracies indicates actual knowledge of falseness, while the constant repetition of inaccuracies indicates constructive knowledge of falseness. Contrary to defendants' suggestion, the "persistent tendency" language of the exclusion from the exclusion does not criminalize innocent errors merely because they are repeated; rather, we believe that it is intended to criminalize inaccuracies that are sufficiently persistent that the party may be charged with constructive knowledge of their falseness. Where, as here, claimants receive a steady flow of government money pursuant to claims prepared by the claimants themselves, they have an affirmative obligation to check the accuracy of their claims to avoid mistakes. Thus, this exclusion from the exclusion covers circumstances in which actual or constructive knowledge of falsity may be assumed because of the systematic or persistent nature of inaccuracies. As stated above, a knowledge requirement includes both actual and constructive knowledge. *American Medical Centers, supra* at 154. Where such actual or constructive knowledge exists, the conduct would not properly fit within the exclusion for innocent errors.

We conclude that the statutes provide fair notice of the proscribed conduct and do not "use terms that require persons of common intelligence to guess at the statute's meaning and differ regarding its application." *Hubbard, supra* at 483-484; *Sanchez, supra* at 555. We also note that in *People v Premen*, 210 Mich App 211, 214-216; 532 NW2d 872 (1995), this Court affirmed a conviction under MCL 752.1003(3); MSA 28.547(103)(3) despite a challenge to its constitutionality on vagueness grounds; however, the Michigan

Supreme Court, 450 Mich 951 (1995), denied leave to appeal but ordered that this Court's opinion have no precedential effect. Specifically, we do not find the statutes unconstitutionally vague in the context of the improper billing at issue here. See *Holt, supra*. The evidence demonstrated 1,357 instances of erroneous billing similar to the instances forming the basis of the present charges against defendants. This extremely high number of similar inaccuracies shows a sufficiently persistent tendency on defendants' part to cause inaccuracies such that defendants may be charged with constructive knowledge of the falsity of billing for office visits in connection with services rendered without the patients being in the office. For these reasons, the trial court did not err in concluding that the statutes at issue are not unconstitutionally vague.[1]

Defendants next argue that the statutes are unconstitutionally vague because the various manuals that delineate the proper procedural codes to be used in billing for various health-care services are vague. However, as noted above, the proper inquiry is whether the *statute* fails to give sufficient notice. Although not binding on this Court, *United States v*

---

[1] We do not agree, however, with the trial court's reliance on *United States v Bay State Ambulance & Hosp Rental Service, Inc*, 874 F2d 20 (CA 1, 1989), where the court determined that the federal Medicare fraud statute, 42 USC 1395nn, was not unconstitutionally vague. In reaching this conclusion, the *Bay State* court relied in large part on the scienter requirement of the statute—"knowing and willingly" coupled with an inducement element. *Id.* at 33. We do not find *Bay State* particularly helpful here because the instant statutes do not require that defendants "willingly" committed the offense. Rather, they require only that the false claim be submitted "knowingly" with the statutory definition of "knowing" including instances of both actual and constructive knowledge. Thus, the statutes here do not have an "unusually high scienter requirement" as relied upon by the *Bay State* court. *Id.* at 33.

*Larm*, 824 F2d 780 (CA 9, 1987), is instructive. In discounting the defendant's argument that the federal Medicaid fraud statute, 42 USC 1396h(a)(1), failed to provide adequate notice of proscribed conduct because the manuals that specified procedure codes for various medical services was too vague, the court stated at 784:

> It is the statute that must give sufficient notice of the proscribed conduct, both through adequate promulgation and definiteness in its language. *See United States v Harriss*, 347 US 612, 617; 74 S Ct 808; 98 L Ed 989 (1954). Here, the statute forbids knowingly false material statements, terms that are adequate to inform the ordinary person of its bounds. Any attack on the billing codes which formed the factual backdrop that made the statements false is ultimately an attack on the sufficiency of the evidence. *See id. at* 618 (a statute is not void for vagueness despite the existence of borderline cases of applicability). If the Larms had proved that they did not know of the codes, or had proved that the codes were too vague to be understood, then there could be no knowingly false statement. But the jury found that they understood the significance of the billing codes that they used, and the record supports this finding.

Similarly, here, defendants' argument that the statutes are unconstitutionally vague because the manuals are vague does not overcome the presumption that the statutes are constitutional. Any argument that the manuals were too vague to be understood would be relevant to the issue whether defendants *knowingly* made false claims. Accordingly, the trial court did not err in finding that the statutes were not unconstitutionally vague on the basis of the alleged vagueness of the manuals.

Defendants next argue that the trial court erred in refusing to give a requested jury instruction on specific intent.

> This Court reviews jury instructions in their entirety to determine if there is error requiring reversal. The instructions must include all elements of the charged offense and must not exclude material issues, defenses, and theories, if there is evidence to support them. Even if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights. [*People v Daniel*, 207 Mich App 47, 53; 523 NW2d 830 (1994) (citations omitted).]

Here, in instructing the jury, the trial court stated:

> Defendant must have acted knowing that the claim was false. "Knowing" and "knowingly" means that a person is in possession of facts under which he or she is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the payment of a Medicaid or healthcare benefit. "Knowing" or "knowingly" does not include conduct which is an error or mistake unless the person's course of conduct indicates a systematic or persistent tendency to cause inaccuracies to be present.

In response to defense counsel's objection to the court's failure to give a jury instruction concerning specific intent, the trial court stated:

> The Court recognized that both Defendants requested the specific intent instruction. The Court considered the . . . argument that an amendment to the statute and the federal case law would suggest that this is not a specific-intent crime. To the extent that it is, it is covered under the definition of "knowing" and "knowingly" as put in subsequent to the 1983 decision of the State Court of Appeals.

Defendants argue that, if we interpret the statutes as setting forth crimes without specific intent, the statutes are unconstitutional because they are essentially designed to codify the common-law crime of fraud. Defendants premise this argument on their reading of *Morissette v United States*, 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952). They claim that *Morissette* held that courts construing statutes that codify a common-law offense cannot interpret the statute as dispensing with culpable mens rea as a necessary element. In *People v Quinn*, 440 Mich 178, 185-188; 487 NW2d 194 (1992), the Michigan Supreme Court held:

> In the seminal case of *Morissette v United States*, 342 US 246; 72 S Ct 240; 96 L Ed 288 (1952), the United States Supreme Court concluded that where the criminal statute is a codification of the common law, and where mens rea was a necessary element of the crime at common law, the Court will not interpret the statute as dispensing with knowledge as a necessary element. The Court stated, "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion." . . .

> \*     \*     \*

> In summary, the United States Supreme Court, in interpreting legislative intent regarding the element of fault, has applied an analytical framework that considers each separate element of the statute. Statutes creating strict liability regarding all their elements are not favored. However, where a statute requires a criminal mind for some but not all of its elements, it is not one of strict liability, *United States v Freed*, 401 US 601, 612; 91 S Ct 1112; 28 L Ed 2d 356 (1971). In such a case, the Legislature is not imposing liability without any fault at all; instead, it has determined that regarding that element, responsibility for the protection of the public should be placed on the person who can best avoid the harm sought to be prevented—the actor himself.

Thus, the *Morissette* Court did not rule, as defendants allege, that every codification of a common-law offense must contain a mens rea element. Further, lack of specific criminal intent does not necessarily leave a statute unconstitutionally vague. *Gora v Ferndale (On Remand)*, 217 Mich App 295, 306; 551 NW2d 454 (1996).

Having already determined that the acts at issue are not unconstitutionally vague and that they require actual or constructive knowledge of the falseness of a presented claim, the only remaining question with respect to this claim of error is whether the trial court erred in failing to read the requested specific intent instruction. Defendants rely on *Premen, supra* at 216-217, for the contention that health-care fraud, as codified in the Health Care False Claim Act, is a specific intent crime. However, the Supreme Court denied leave to appeal in *Premen* and ordered that this Court's opinion "have no precedential force or effect."

This Court has vacillated regarding the issue whether the existence of knowledge as an element makes a crime one of specific rather than general intent. In *American Medical Centers, supra* at 153, we held that a prior version of the Medicaid False Claim Act provided for a specific intent crime because it required a mental state of "knowingly." Similarly, in *People v Ainsworth*, 197 Mich App 321, 325; 495 NW2d 177 (1992), this Court held that the offense of stealing or retaining a financial transaction device was a specific intent crime, "given that knowledge is an essential element of this crime." However, in *People v Laur*, 128 Mich App 453, 455; 340 NW2d 655 (1983), and *People v Watts*, 133 Mich App 80, 82-

84; 348 NW2d 39 (1984), this Court stated that, where a knowledge element is necessary to prevent innocent acts from constituting a crime, the knowledge element merely requires general criminal intent and does not make the crime one of specific intent. See also *People v Langworthy*, 416 Mich 630, 638-641; 331 NW2d 171 (1982), which discusses the difficulty of differentiating general intent crimes from specific intent ones.

The present case does not require us to resolve whether the offenses at issue are specific intent crimes. On the authority of *American Medical Centers* and *Ainsworth*, we will assume that the knowledge element of these offenses make them specific intent crimes. The *American Medical Centers* Court held, regarding a prosecution under the prior version of MCL 400.607; MSA 16.614(7), that the trial court adequately instructed the jury concerning the specific intent element by reading the statutory definition of the term "knowing," even though it refused to give an instruction on specific intent. *American Medical Centers*, *supra* at 153-154. Here, the trial court similarly refused to give a requested specific intent instruction and instructed the jury regarding the intent element by reading the statutory definition of "knowing."

Defendants assert that *American Medical Centers* is distinguishable because the version of MCL 400.602; MSA 16.614(2) at issue there defined "knowing" and "false statement" in different terms than the statutes at issue here. The version of the statute at issue in *American Medical Centers* did not state that "[k]nowing or knowingly does not include conduct which is an error or mistake unless the person's course of conduct indicates a systematic or persistent

tendency to cause inaccuracies to be present" and that "knowing" includes instances where the person is in possession of facts under which the person "should be aware" of the nature of the person's conduct. However, the trial court in *American Medical Centers* instructed the jury that knowledge included constructive knowledge. *Id.* at 154. Therefore, the fact the present version of the statute includes constructive knowledge is no basis for distinguishing the present case from *American Medical Centers*. The *American Medical Centers* Court found no error in the failure to give a specific intent instruction where the trial court read the statutory definition of "knowing" and specifically noted that the instructions did not allow the jury to convict for a "simple mistake." *Id.* at 152-154. Similarly, we conclude that the jury was properly instructed regarding the knowledge element here. If the offenses at issue are specific intent crimes, reading the statutory definition of "knowing" adequately instructed the jury regarding this element despite the failure to give a specific intent instruction. See also *People v Wilson,* 159 Mich App 345, 352; 406 NW2d 294 (1987). If these offenses are not specific intent crimes, there was, of course, no duty to give a specific intent instruction.

Defendants next argue that the trial court erred in admitting evidence showing 1,357 instances of erroneous billing similar to the instances forming the basis of the charges against defendants. Specifically, defendants argue that this evidence was inadmissible under MRE 404(b) because they believed that they had billed *appropriately* and did not claim that their errors were due to clerical mistakes. Indeed, they argue that the persistence of their errors is affirma-

tive evidence of their good-faith belief that their interpretation of the codes was correct. The statutory definition of "knowing" indicates that "knowing or knowingly does not include conduct which is an error or mistake unless the person's course of conduct indicates a systematic or persistent tendency to cause inaccuracies to be present." MCL 400.602(f); MSA 16.614(2)(f) and MCL 752.1002(h); MSA 28.547(102)(h). Under the statutory definition, this objected-to evidence is relevant in terms of establishing the "knowing" element because 1,357 instances of inaccurate billing may demonstrate a "persistent tendency to cause inaccuracies to be present." Defendants' grievance here is not with the application of MRE 404(b), but rather with the definition of "knowing" in the statutes governing false Medicaid and healthcare claims. See earlier discussion. We find no merit in defendants' argument that the evidence was not relevant under the circumstances or that it was unduly prejudicial.

Defendant Velez-Ruiz next argues that the trial court erred in denying her motion for a directed verdict because there was insufficient evidence on the record at the time of the motion to support her conviction. Initially, we note that because Velez-Ruiz submitted her billings to the various insurance carriers via a computerized billing service and so notified the carriers, the statutes created a rebuttable presumption that any false claim was knowingly made. MCL 400.608(3); MSA 16.614(8)(3) and MCL 752.1007(3); MSA 28.547(107)(3). Additionally, other evidence suggested that Velez-Ruiz was aware of her office's improper billing practices. There was testimony that Velez-Ruiz told office employees not to document fol-

low-up appointments as such because there were bill-ing ramifications. The evidence suggests that Velez-Ruiz acceded to Perez-DeLeon's alterations of diag-nostic codes that she had chosen. This suggests that she knowingly allowed Perez-DeLeon to inaccurately characterize the nature of the services that she pro-vided. Further, the evidence of 1,357 instances of inaccurate billing also satisfies the statutory defini-tion of "knowing." Therefore, viewed in a light most favorable to the prosecution, a rational trier of fact could conclude that the essential elements of the crime were proved beyond a reasonable doubt. See *People v Davis*, 216 Mich App 47, 52-53; 549 NW2d 1 (1996). Because of the difficulty in proving a defend-ant's state of mind, circumstantial evidence is often necessary and is wholly satisfactory in sustaining a conclusion that the defendant possessed the requisite intent. *People v Bowers*, 136 Mich App 284, 297; 356 NW2d 618 (1984).

Velez-Ruiz further argues that the trial court abused its discretion in denying her motions for severance and for a separate jury. However, both defendants claimed that they did not know the billings were inac-curate. Their defenses were not mutually exclusive or irreconcilable; therefore, severance was not required here. See *People v Cadle (On Remand)*, 209 Mich App 467, 469; 531 NW2d 761 (1995). In addition, defendant failed to submit an affidavit or make an offer of proof that persuasively demonstrated that her substantial rights would be prejudiced and that severance was the necessary means of rectifying the potential prejudice. See *People v Hana*, 447 Mich 325, 346-347; 524 NW2d 682 (1994).

The trial court did not specifically address Velez-Ruiz' argument that separate trials or juries should be granted because otherwise she would not be able to cross-examine Perez-DeLeon regarding statements he made that may have been incriminating to her. However, none of Perez-DeLeon's alleged admissions or statements entered into evidence *directly* incriminated Velez-Ruiz in the manner envisioned in *Bruton v United States*, 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968), *Richardson v Marsh*, 481 US 200, 207-208; 107 S Ct 1702; 95 L Ed 2d 176 (1987), and *People v Frazier (After Remand)*, 446 Mich 539; 521 NW2d 291 (1994). They did so only by inference. Therefore, in light of the trial court's clear instruction to the jury that it should not consider evidence admitted against one defendant when considering the guilt of the other, Velez-Ruiz' confrontation rights were not violated. For these reasons, Velez-Ruiz was not entitled to a new trial on the basis of the court's refusal to sever her trial from Perez-DeLeon's.

Velez-Ruiz next argues that this Court should review various notes and records, prepared by the prosecution regarding its settlement agreement with Dr. Benejam and evaluated by the court in camera, to determine if the trial court abused its discretion by not ordering that they be disclosed to defendant. However, defendant has provided no clear explanation regarding why such notes and records would be relevant to her defense. Therefore, the trial court did not abuse its discretion in refusing to order that the notes were discoverable. See *People v Stanaway*, 446 Mich 643, 680; 521 NW2d 557 (1994).

Perez-DeLeon raises four additional issues in a separate brief filed in propria persona.[2] He raises two claims of ineffective assistance of counsel. In order to justify reversal of an otherwise valid conviction on the basis of ineffective assistance of counsel, "a defendant must show that a counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). His claims here do not meet this standard. He further claims that the charges at issue constitute malicious prosecution. The elements of malicious prosecution are a "special injury," that prior proceedings terminated in favor of the present plaintiff, the absence of probable cause for those proceedings, and a showing of malice. *Friedman v Dozorc*, 412 Mich 1, 48; 312 NW2d 585 (1981). If Perez-DeLeon had filed a malicious prosecution action, his allegations would not satisfy this standard. Finally, he claims that the circuit court lacked subject-matter jurisdiction over the charges at issue because the original purpose of the false claims acts at issue was to proscribe claims for medical services that were not medically necessary. Perez-DeLeon contends that all the claims at issue were for medically necessary services. By their express terms, the acts at issue reach false claims regardless of whether the services were medically

---

[2] Appellate briefs are generally limited to fifty pages. MCR 7.212(B). Here, the brief submitted by Perez-DeLeon's counsel was fifty pages long. We question the practice of submitting an additional appellate brief, in propria persona, without moving for permission to file a brief in excess of the fifty-page limit.

necessary. For these reasons, we find no merit in any of the claims raised in Perez-DeLeon's separate brief.

Affirmed with respect to both defendants.