# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

XUN WANG,

Defendant-Appellant.

UNPUBLISHED
May 10, 2018

No. 336673
Ingham Circuit Court
LC No. 15-000754-FH

Before: METER, P.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Following a bench trial, defendant was convicted of two counts of Medicaid fraud, MCL 400.607(1) (false claim), and one count of the unlawful practice of a health profession, MCL 333.16294. She was sentenced to 60 months' probation, allowing for release from probation upon payment of fines and costs, and to concurrent terms of 365 days in jail, held in abeyance and to be suspended upon completion of probation. Defendant was ordered to pay $106,454.00 in costs and fines. Defendant appeals as of right. We affirm defendant's convictions, but vacate in part defendant's sentence, and remand for resentencing.

## I. FACTS

Defendant is from China and earned a medical degree there. After moving to the United States in 2001, defendant earned a Ph.D. in basic medical science from Purdue University's veterinary school, and thereafter worked as a medical researcher at the University of Michigan's medical school. In 2013, she began a student rotation through the AmeriClerkships program working at Livernois Family Clinic (Livernois), which was owned by Dr. Murtaza Hussain. Defendant eventually was hired by the clinic. Defendant's job was to meet with patients, gather each patient's medical history, and document the illness presented and her observations. Once the interview with the patient was complete, she would enter her notes into the clinic's computer and also meet with Hussain to make a diagnosis. Defendant testified that if a patient needed a prescription, she would report to Hussain the patient's history, along with the medication and dosage she recommended, and Hussain would determine whether to write the patient a prescription.

In 2014, the state's Department of the Attorney General conducted an investigation of Livernois. As part of the investigation, Drew Macon and Lorrie Bates, special agents with the Attorney General's Office, separately went to Livernois posing as patients with Medicaid

-1-

benefits.  Macon testified that after checking in at the reception desk and presenting his Medicaid card, defendant took his blood pressure, weighed him, and took a brief medical history, but did not perform a physical examination.  According to Macon, he requested prescriptions for vitamin D, an inhaler, Klonopin,[1] and Adderall.[2]  After taking his history, defendant left the room and returned after several minutes, and requested his previous medical records because he was a new patient.  Macon testified that he received prescriptions for vitamin D, Klonopin, and the inhaler. To obtain the Adderall prescription, he had to call the office back the next day to inform the staff of the dosage he took; when he did so, he was informed that he could pick up that prescription later in the week.  Macon stated that his patient chart indicated that he had been seen by Hussain, but that he did not see Hussain that day.

Bates was also seen by defendant.  Bates testified that she told a medical technician at the clinic that she was suffering from headaches and had trouble sleeping, and that after taking her medical history, the technician told her that "the doctor would be in shortly."  The next person to enter the room was defendant.  According to Bates, defendant, was wearing a white lab coat and had a stethoscope, and introduced herself as Dr. Hussain's assistant.  Defendant told Bates that she would provide something for the headaches, and then left the room for approximately five minutes.   When defendant returned, she told Bates that a prescription had been sent to a pharmacy, and according to Bates, defendant then "took a flashlight and shined that into my eyes and put my arms out in front of me and then after that she had me sit down and then grab ahold of her and try to pull her forward towards me and then she had me sit down in my chair and she grabbed my legs and told to me to push out towards her."

According to Bates, defendant explained that she was not the doctor, that Hussain was, and that he was not at the office that day.  But when Bates asked defendant how long she had been a doctor, defendant stated that she had been a doctor for about one year.  Bates testified that defendant again stated that she would call in a prescription for medication for the headaches, and then recommended melatonin to help her sleep.  As they discussed the sleep issue further, defendant "pulled . . . what appeared to be a prescription pad out of [the] pocket of her lab coat and then began to write on it and at that point . . . she handed me a prescription" for Ambien.[3] Bates testified that the note in her chart stated that she had been seen by defendant and Hussain.

Defendant was charged with two counts of Medicaid fraud, MCL 400.607(1) (false claim), and one count of unlawful practice of medicine, MCL 333.16294.  At trial, Dr. Catherine Reid, a consulting physician in the Office of Medical Affairs, testified that she had reviewed the videos taken of the appointments with Bates and Macon.   Reid opined that defendant was

---

[1] Klonopin is the trade name of clonazepam, which is a Schedule 4 controlled substance.  MCL 333.7218(1)(a).

[2] Adderall is an amphetamine, which are Schedule 1 controlled substances.   MCL 333.7212(1)(c).

[3] Ambien is the trade name for zolpidem, which is a schedule-4 controlled substance pursuant to Mich Admin Code R 338.3123(1).  *Bloomfield Twp v Kane,* 302 Mich App 170, 184; 839 NW2d 505 (2013).

engaged in the practice of medicine. The basis for this opinion was that in Bates' video, defendant walked in after the technician stated that the doctor would be in shortly, defendant was wearing a white lab coat with a stethoscope around her neck, defendant took a detailed medical and social history, asked specific questions with respect to Bates' headache, and then offered her medication. Reid stated that the exam performed on Bates, involving the light in her eyes as well as pushing and pulling on her arms and legs, was "an exam a physician would do."

Dr. Hussain testified that he discussed defendant's findings with her with respect to "almost every case." After defendant would enter her notes into the computer, he would review them, make changes if necessary, and then "sign" the notes, at which point the computer system would automatically generate a diagnosis code for Medicaid.[4] According to Hussain, he left signed prescription pads at his office and his office could call him to determine if they could give the patient a prescription if he was not in the office. He said that defendant was not permitted to write a prescription without consulting him and that he was available by phone for defendant to contact him.

Darius Baty worked at Livernois in August 2014 and was familiar with Medicaid billing at Livernois. Baty testified that "[a]fter the patient was evaluated and diagnosed, Doctor Hussain would circle on the face sheets exactly the codes for the procedures that he completed and then he would also update the progress notes within the computer." Baty would then ensure that the codes matched the progress notes and then submit the information to a third-party biller. Baty testified that defendant did not participate in the billing process. Defendant testified, however, that she was aware that some of the patients who came to Livernois were Medicaid patients.

At the conclusion of the trial, the trial court found that the evidence demonstrated that defendant had "made, presented, or caused to be made or presented a claim to the state or its agent" for Medicaid, that the claim was false, and that defendant knew that it was false. The trial court noted that at least half of Livernois' earnings came from Medicaid, that billing information could be found on the form used by defendant to take notes, that defendant therefore knew that insurance would be billed, and also knew that her paycheck was derived from insurance and Medicaid. In explaining its finding that defendant caused Medicaid to be billed, the court stated:

> A doctor must be present in order to delegate to an unlicensed physician, which [defendant] was clearly an unlicensed physician in Michigan. There is testimony that at least on two occasions . . . Doctor Hussain was not there, so at least twice Medicaid was billed and should not have been billed, so defendant caused Medicaid to be billed[;] that was false and defendant knew or should have known that this was a wrongful act.

With respect to the charge of unlawful practice of medicine, the trial court found "ample" evidence that defendant practiced medicine without a license, stating that defendant "perform[ed] invasive and non-invasive procedures and the patients . . . believed or had reason, cause to

---

[4] Hussain testified that he had been convicted by plea of one count of Medicaid fraud and one count of health care fraud.

believe that you were a doctor." The trial court declined to sentence defendant to a prison term, noting that such a sentence would not serve justice. Instead, the trial court sentenced defendant to probation for five years, but explained that she would be released from probation early if she paid her fines and costs. Defendant was also sentenced to 365 days in jail, with credit for one day served, with the sentence held in abeyance pending successful completion of probation. Defendant also was ordered to pay $106,454.00 in costs and fines. Defendant now appeals.

## II. ANALYSIS

## A. UNLAWFUL PRACTICE OF A HEALTH PROFESSION

Defendant first contends that her conviction for the unlawful practice of a health profession should be vacated because it was not supported by sufficient evidence, because the trial court failed to make the requisite findings, and because her trial counsel was ineffective. We disagree.

We review de novo a challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). Where, as here, a defendant fails to preserve a claim of ineffective assistance of counsel by moving for an evidentiary hearing or a new trial, our review is limited to errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

Defendant was convicted of the unauthorized practice of a health profession, which is proscribed by MCL 333.16294 as follows:

> Except as provided in section 16215, an individual who practices or holds himself or herself out as practicing a health profession regulated by this article without a license or registration or under a suspended, revoked, lapsed, void, or fraudulently obtained license or registration, or outside the provisions of a limited license or registration, or who uses as his or her own the license or registration of another person, is guilty of a felony.

"Health profession" is defined by MCL 333.16105(2), as "a vocation, calling, occupation, or employment performed by an individual acting pursuant to a license or registration issued under this article." Because the practice of medicine is regulated and licensed under Article 15 of the Public Health Code, the practice of medicine is a "health profession" within the meaning of MCL 333.16294. The "practice of medicine" is defined as "the diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means, or offering, undertaking, attempting to do, or holding oneself out as able to do, any of these acts." MCL 333.17001(h).

The parties do not dispute that defendant is not licensed to practice medicine in the United States. At trial, ample evidence was presented that defendant was engaged in the "diagnosis, treatment, prevention, cure, or relieving of a human disease, ailment, defect, complaint, or other physical or mental condition, by attendance, advice, device, diagnostic test, or other means." Similarly, defendant held herself out as being able to engage in these activities. Defendant met with both Macon and Bates without Hussain. In each case, she discussed the

-4-

patient's symptoms with the patient and engaged in diagnosis. When meeting with Bates, she represented herself to be a doctor, engaged in an examination, and wrote a prescription for Bates without consulting with Hussain. Dr. Reid testified that defendant had engaged in the activities of a doctor by taking a detailed medical and social history, asking specific questions with respect to Bates' symptoms, performing an exam, and prescribing medication. The evidence therefore supports the finding that defendant was engaged in the practice of medicine, and therefore was practicing a health profession without a license.

Defendant argues, however, that the tasks that she performed were properly delegated to her by Dr. Hussain and therefore were not the unauthorized practice of a health profession. MCL 333.16294, which prohibits the unauthorized practice of a health profession, specifically states an exception to that prohibition "as provided in section 16215," being MCL 333.16215. That section provides for the delegation of acts, tasks, or functions as follows:

> (1) Subject to subsections (2) to (6), a licensee who holds a license other than a health profession subfield license may delegate to a licensed or unlicensed individual who is otherwise qualified by education, training, or experience the performance of selected acts, tasks, or functions where the acts, tasks, or functions fall within the scope of practice of the licensee's profession and will be performed under the licensee's supervision. A licensee shall not delegate an act, task, or function under this section if the act, task, or function under standards of acceptable and prevailing practice, requires the level of education, skill, and judgment required of the licensee under this article. [MCL 333.16215.]

Because MCL 333.16294 states "except as provided in section 16215," negating the statutory exception is an element of the offense for which the prosecution, not the defendant, typically has the burden of proof. See *People v Rios*, 386 Mich 172, 178 n 2; 191 NW2d 297 (1971) (criminal statutes generally are construed to require the prosecution to prove that a defendant is not within a statutory exception). To fall within this exception, the tasks delegated must be within the education, training, and ability of the person performing the task, and must be performed under the supervision of the licensee. "Supervision" is defined as "the overseeing of or participation in the work of another individual by a health professional licensed under this article. . . ." MCL 333.16109(2). Supervision also requires "[t]he continuous availability of direct communication in person or by radio, telephone, or telecommunication between the supervised individual and a licensed health professional," as well as "[t]he availability of a licensed health professional on a regularly scheduled basis to review the practice of the supervised individual, to provide consultation to the supervised individual, to review records, and to further educate the supervised individual in the performance of the individual's functions," and "[t]he provision by the licensed supervising health professional of predetermined procedures and drug protocol." MCL 333.16109(2)(a)-(c). In addition, the "delegation exception" does not allow for the delegation of acts, tasks and functions that one must be a licensed doctor to perform, regardless of supervision.

Defendant's actions were consistent with the practice of medicine and therefore could not be delegated to her under the statute. Defendant engaged in the tasks of examining patients, diagnosing patients, and prescribing medication, i.e., the tasks of a doctor. Viewed in a light most favorable to the prosecution, the testimony of the agents who posed as patients was

sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant performed acts falling within the practice of medicine and that defendant was therefore engaged in the unlawful practice of a health profession. This conclusion is supported by the purpose of the statutes regulating health care professionals "to safeguard the public health and protect the public from incompetence, deception, and fraud." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 530; 854 NW2d 152 (2014).

Defendant argues, however, that the trial court failed to state its findings as required by MCR 6.403 regarding whether the tasks were appropriately delegated, indicating that the trial court failed to consider the statutory exception, and thus requiring that her conviction be vacated. We disagree.

When a trial court sits without a jury in a criminal trial, the trial court is required to state its specific findings of fact and conclusions of law either on the record or in a written opinion. MCR 6.403; *People v Shields*, 200 Mich App 554, 558; 504 NW2d 711 (1993). The trial court is not required to make specific findings of fact regarding each element of the crime, however. *People v Legg*, 197 Mich App 131, 134; 494 NW2d 797 (1993). The trial court's findings and conclusions are sufficient if they are "brief, definite, and pertinent" on the contested issues, MCR 2.517(A)(2),[5] and if it is apparent that the trial court was aware of the issues and correctly applied the law. *People v Smith*, 211 Mich App 233, 235; 535 NW2d 248 (1995). A trial court's failure to find facts does not require remand if it is apparent that the trial court was aware of the factual issues, resolved the issues, and that further findings by the trial court would not facilitate appellate review. *Legg*, 197 Mich App at 134-135.

In this case, the trial court did not specifically rule on the "delegation exception" in concluding that defendant had violated MCL 333.16294 by the unlawful practice of medicine. As noted, however, the exception is included in the text of MCL 333.16294 and the negating of the statutory exception is therefore an element of the offense which the prosecution had the burden of proving. The prosecution did so by introducing the expert testimony of Dr. Reid who testified that the activities in which defendant was engaged were the tasks usually performed by a doctor. From this testimony, the trial court could conclude that defendant's activities did not fall within the exception. It was clear from the trial court's findings and conclusions on the record that the trial court was aware of the provisions of MCL 333.16294, was aware of the issues in the case, and correctly applied the law. We therefore conclude that the trial court's findings are sufficient to comply with MCR 6.403.

Defendant also argues that defense counsel at trial was ineffective for failing to bring the "delegation exception" under MCL 16215(1) to the trial court's attention. We disagree. A criminal defendant is entitled to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel is presumed to be effective, and we further presume that counsel's challenged actions were sound trial strategy. *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015). To prevail on a

---

[5] The requirements of MCR 2.517(A)(1) were made applicable to criminal cases by *People v Jackson*, 390 Mich 621, 627; 212 NW2d 918 (1973), and later mirrored in MCR 6.403.

claim of ineffective assistance of counsel, "the defendant first must show that counsel's performance was below an objective standard of reasonableness under prevailing professional norms." *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994). "Second, the defendant must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id*. at 687-688. Given our conclusion that defendant's actions did not fall within the "delegation exception," we cannot find that defendant's trial counsel was ineffective for failing to assert a meritless argument. See *People v Johnson*, 315 Mich App 163, 178; 889 NW2d 513 (2016).

## B. MEDICAID FRAUD

Defendant also contends that the trial court erred by convicting her of Medicaid fraud. Defendant challenges the sufficiency of the evidence, arguing that no evidence established that she knowingly submitted a false claim or was even aware of the billing practices of Livernois. Again, we disagree.

The Medicaid False Claim Act (MFCA), MCL 400.601 *et seq*., provides that "[a] person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false." MCL 400.607(1). This Court has held that to prove a violation, the prosecution must establish

> (1) the existence of a claim, (2) that the accused makes, presents, or causes to be made or presented to the state or its agent, (3) the claim is made under the Social Welfare Act . . . , (4) the claim is false, fictitious, or fraudulent, and (5) the accused knows the claim is false, fictitious, or fraudulent. [*People v Orzame*, 224 Mich App 551, 558; 570 NW2d 118 (1997).]

The MFCA defines "knowing" and "knowingly" as follows:

> "Knowing" and "knowingly" means that a person is in possession of facts under which he or she is aware or should be aware of the nature of his or her conduct and that his or her conduct is substantially certain to cause the payment of a medicaid benefit. Knowing or knowingly includes acting in deliberate ignorance of the truth or falsity of facts or acting in reckless disregard of the truth or falsity of facts. Proof of specific intent to defraud is not required. [MCL 400.602(f).]

This Court has held that the knowledge element relates both to the nature of that person's conduct and also that the conduct is substantially certain to cause the payment of a Medicaid benefit. *Orzame*, 224 Mich App at 560. This Court further stated, in discussing the knowledge element of MCL 400.607(1) and MCL 400.602(f), that

> "Intent and knowledge can be inferred from one's actions and, when knowledge is an element of an offense, it includes both actual and constructive knowledge." *People v American Medical Centers of Michigan, Limited*, 118 Mich App 135, 154; 324 NW2d 782 (1982). Therefore, it is not problematic that these statutes define "knowing" to include "should be aware." Contrary to defendant's

contention, this actual or constructive knowledge element does not relate solely to knowledge that a claim is filed. The knowledge element relates to both "the nature of his or her conduct *and* that his or her conduct is substantially certain to cause the payment of a [Medicaid or] health care benefit." [*People v Perez-DeLeon*, 224 Mich App 43, 48; 568 NW2d 324 (1997).]

Defendant argues that there was insufficient evidence that she was "knowing" with respect to the fraud. Defendant's actions, however, caused claims to be made for payment under Medicaid, and defendant was aware, or should have been aware, that her conduct was substantially certain to cause the payment of a Medicaid benefit. The trial court found that "defendant made, presented, or caused to be made or presented a claim to the state or its agent," that "the claim was made to Medicaid," that "the claim was false," and that "defendant knew the claim was false." Evidence presented at trial demonstrated that defendant was familiar with the Medicaid system, and was aware that the clinic saw Medicaid patients. Although she did not personally submit the charges to Medicaid, she was aware that the patients she saw were billed for her services as though the patient had been seen by a doctor. In other words, defendant's conduct was "substantially certain to cause the payment of a Medicaid benefit." MCL 400.602(f). We therefore conclude from the evidence presented, and the reasonable inferences drawn from that evidence, that the trial court did not err in finding the prosecution proved this element.

Defendant also challenges the trial court's findings on this charge as inadequate to satisfy MCR 6.403, which requires that in a bench trial the trial court state its factual findings and conclusions of law, either on the record or in a written opinion. As noted, the trial court is not required to make specific findings of fact regarding each element of the crime. *Legg*, 197 Mich App at 134. Here, the trial court, when considering the Medicaid fraud charges, found that "defendant made, presented, or caused to be made or presented a claim to the state or its agent," that "the claim was made to Medicaid," that "the claim was false," and that "defendant knew the claim was false." We conclude that regarding the issue of Medicaid fraud, the findings and conclusions of the trial court were sufficient to demonstrate that the trial court was aware of the issues in the case and correctly applied the law.

C. PROPORTIONALITY OF SENTENCE

Defendant also argues that the trial court erred because the fine imposed violated the principle of proportionality. A trial court's discretionary sentencing decisions are subject to appellate review to ensure that the trial court has not abused its discretion. *People v Norfleet*, 317 Mich App 649, 663; 897 NW2d 195 (2016). "[A] given sentence can be said to constitute an abuse of discretion if that sentence violates the principle of proportionality, which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). Although a typical appellate challenge to the proportionality of a sentence relates to a sentence of imprisonment, *People v Foster*, 319 Mich App 365, 385; 901 NW2d 127 (2017), this Court has held that the *Milbourn* analysis also applies to the proportionality of a fine. *People v Antolovich*, 207 Mich App 714, 719; 525 NW2d 513 (1995), superseded by statute on other grounds as stated in *People v Lloyd*, 284 Mich App 703, 709 n 2; 774 NW2d 347 (2009); *People v Rosenberg*, 477 Mich 1076; 729 NW2d 222 (2007) (remanding for a determination of whether

a fine was appropriate under *Antolovich*); see also *People v Miller*, 206 Mich App 638, 640; 522 NW2d 697 (1994) (imposition of a term of imprisonment and a fine did not violate the principal of proportionality under the facts of that case).

A trial court may impose "[a]ny fine authorized by the statute for a violation of which the . . . court determined that the defendant was guilty." MCL 769.1k(1)(b)(*i*). The MFCA provides that a person who is found guilty of causing a false claim to be presented may be punished by a maximum term of imprisonment of four years, a maximum fine of $50,000, or both. MCL 400.607(4). The Public Health Code, MCL 333.1101 *et seq*., does not provide for a penalty for the unlawful practice of medicine; therefore, under MCL 750.503, the maximum penalty is a $5,000 fine, imprisonment for no longer than four years, or both.

Here, the trial court imposed a fine of $50,000 for each Medicaid fraud conviction and $5,000 for the unauthorized practice of medicine conviction. These fines represent the maximum fines a court may impose for these offenses. The trial court offered no explanation for imposing the maximum fines for each conviction, aside from stating that "we as a people cannot afford" Medicaid fraud and that "[y]ou didn't care about your patients to stand up for what's right, to stand as the example for foreign doctors to do the hard work that's involved." These statements appear directed at the broader problem of Medicaid fraud, and have little to do with the severity of defendant's actions.[6] Defendant previously did not have a criminal record. We therefore remand for the trial court to apply the analysis of *Milbourn* and state its reasons on the record for any fine it imposes.

Defendant's convictions are affirmed. We vacate that part of the sentence imposing fines and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Michael F. Gadola
/s/ Jonathan Tukel

---

[6] The total amount reimbursed by Medicaid for the visits of Bates and Macon was $260.